*In re* MARRIAGE OF KIMBERLY ANN LOMBAER, Petitioner-Appellant, and FOREST LOMBAER, JR., Respondent-Appellee.

First District (3rd Division)   No. 1—89—2929

Opinion filed June 27, 1990.

Schiller, DuCanto & Fleck, Ltd., of Chicago (Charles J. Fleck and Sarane C. Siewerth, of counsel), for appellant.

Mandel, Lipton & Stevenson, of Chicago (Richard L. Mandel, R. Peter Carey, and Uve R. Jerzy, of counsel), for appellee.

JUSTICE RIZZI delivered the opinion of the court:

This matter is before the court as an interlocutory appeal from orders entered directing the deposition of a psychiatrist, the tendering of hospital records, exclusive possession of the marital residence, supervised visitation and temporary custody of the children. On appeal, petitioner-appellant, Kimberly Ann Lombaer (Kimberly), argues that the trial court erred (1) in ordering the discovery deposition of her psychiatrist and the turnover of hospital records; (2) in awarding temporary custody of the minor children to the respondent-appellee, Forest Lombaer, Jr. (Forest); (3) in ordering supervised visitation; and (4) in awarding exclusive possession of the marital residence to respondent. We reverse and remand.

The parties married in 1978. Their two children were born in 1983 and 1987, respectively. Kimberly became a full-time homemaker after the birth of their second child.

In January of 1989, Forest, a practicing attorney for 11 years, was notified by his law firm that his position would be terminated at the end of the year. Forest did not tell Kimberly of his termination until August of 1989. The parties discussed dissolving their marriage during the summer of 1989.

According to Kimberly, on July 31, 1989, Forest struck and beat her. Forest denied these allegations and averred that he had to "physically restrain her to prevent her from harming herself by avoiding [prescribed] treatment." On August 1, 1989, Forest called the police and had Kimberly taken to Northwestern Memorial Hospital, where she remained until August 9, 1989.

On August 25, 1989, Forest again summoned the police and Kimberly was taken to Illinois Masonic Medical Center. Kimberly was hospitalized from August 25 until October 23, 1989. While hospitalized, Kimberly spoke to the children everyday. She talked to the older child about her homework, school projects and her brother. Approximately once a week, Forest brought the children to visit Kimberly.

Kimberly learned that Forest had transferred over $45,000 from their joint banking account to an account in his name. She responded by transferring approximately $15,000 to an account in her name. In her petition for dissolution of marriage which she filed while hospital-

ized, Kimberly alleged that Forest subjected her to extreme cruelty, including striking and beating her and threatening to have her confined to a mental hospital. Kimberly requested custody of the children, restoration to and exclusive possession of the marital residence, support, an injunction restraining Forest from abusing her and interfering with her personal liberty and an order directing the redeposit of all funds into joint accounts.

On September 26, 1989, on a pass from the hospital and in anticipation of her immediate release, Kimberly presented an emergency motion for temporary child support, custody and exclusive possession of the marital apartment. The court set her motion for hearing on September 29, 1989, and granted Forest until September 28, 1989, to respond.

September 28, 1989, Forest filed an answer to the petition for dissolution of marriage and a counterpetition for dissolution in which he alleged that he had been forced to call for police assistance to get Kimberly to the hospital to prevent her from harming herself by avoiding treatment, that she had several episodes of mental illness, needed psychiatric care, was unable to care for the children and should not be allowed exclusive possession of the residence. Forest also served notice that on the next day, he would be presenting a petition for order of protection and for change of venue.

On September 29, 1989, the trial court, instead of hearing Kimberly's motion for temporary relief, granted Forest's motion for a change of venue and the matter was reassigned to another judge. The new judge set Kimberly's emergency petition for temporary relief, as well as Forest's petition, for hearing on October 26, 1989.

On October 10, 1989, Forest filed the petition for an order of protection, motions pursuant to Supreme Court Rule 215(d) (107 Ill. 2d R. 215(d)) for a psychiatric examination of Kimberly, and for the issuance of subpoenas for the discovery depositions of psychiatrists Dr. Carl Jackson and Dr. Harry Whiteley.

On October 23, 1989, after her release from Illinois Masonic Medical Center, Kimberly arrived at the marital residence, accompanied by two police officers, and attempted to enter her home. Forest refused to allow her to enter, stating that it was not in the children's best interest to be disrupted by her arrival at 10:30 p.m. because a "scene" might take place or the children might be damaged. Kimberly tried to return to Illinois Masonic Hospital, but since there were no beds available, she went to Charter Barclay Hospital, where she stayed for two days prior to the October 26, 1989, hearing.

On October 24, 1989, notwithstanding the scheduled October 26,

1989, hearing, Forest filed an emergency motion seeking to restrain Kimberly from communicating with their daughter's school, taking custody of the children and returning to the marital home. Within the motion it is stated that Kimberly's counsel would not return from vacation until October 25, 1989, and that Forest's attorney gave telephonic notice of the motion to the office secretary. The motion states that "[t]here is a need for *ex parte* relief for the protection of the children and the stability and preservation of the status quo until the next court hearing."

Forest and his attorney presented the motion *ex parte*. Forest's counsel advised the court that Kimberly's counsel was on vacation; that the previous evening after her release from the hospital she returned home at 10:30 p.m., and had "constantly" called the school. They sought exclusive possession and temporary custody for two days. The testimony elicited during this October 24, 1989, hearing was as follows:

"THE COURT: You want exclusive possession? Does your wife have some facility? Does she have a place to live?

THE WITNESS [Forest]: I attempted to talk to her.

THE COURT: Does she have any relatives or friends?

THE WITNESS [Forest]: She has a couple of friends. That may be who she stayed with.

THE COURT: She stayed with one?

MR. LOMBAER [Forest]: Yes."

The court granted the emergency motion *ex parte* allowing Forest exclusive possession of the residence, temporary custody of the children and an injunction forbidding Kimberly from harassing, entering or calling the school.

During the October 26, 1989, hearing, Kimberly informed the court that she had no place to go and that a women's shelter had advised her on the night of October 23, 1989, to have the police escort her home. Forest's counsel argued that Kimberly's mental condition was at issue because she had been confined to psychiatric hospitals for 2½ months; that the hospitalization was evidence that Kimberly would harm the children; and that he had a right to examine her treating physician because she had waived any privilege.

During the October 26, 1989, hearing, when asked by the court, "Have you exerted a privilege as to confidentiality between you and your doctor?" the following exchange occurred:

"THE WITNESS: I don't understand that question.

THE COURT: Well, the question is did you tell the doctor not to discuss your condition with your husband?

THE WITNESS: Yes, I did.

THE COURT: That is all the question is.

[COUNSEL FOR RESPONDENT]: What medication are you on?

A. None.

Q. None?

A. None.

Q. Was any medication prescribed to you while you were in the hospital?

A. Yes, sir.

Q. What medication was prescribed to you while you were in the hospital?

A. This is sort of private.

[COUNSEL FOR PETITIONER]: Just a moment. That is going to open the door on the question of waiving the privilege. I would have to object to that.

[COUNSEL FOR RESPONDENT]: There is no privilege on that kind of a question. This is not a confidential statement.

[COUNSEL FOR PETITIONER]: The doctor had to prescribe something and that opens the door to the basis for his prescription.

THE COURT: I don't believe so. The objection is overruled. If she knows what medication she got, she should answer the question."

Thereafter, in response to the court's request for evidence that the mother's presence in the residence would harm the children, counsel stated that Kimberly had engaged in bizarre behavior, such as being awake all night, walking and waking the children. The court noted that even if Kimberly's conduct was unusual, it would not necessarily be harmful to the children and therefore the only condition under which he would exclude her from the residence would be for one week in order for her to participate in an independent medical examination.

Forest's counsel further argued for temporary custody, supervised visitation, and exclusive possession of the residence. In support thereof, Forest stated that Kimberly was restless, losing weight, irritable, nervous and short-tempered with the children. Forest stated that Kimberly did not properly supervise the children. He stated that their son, who was an extremely active toddler, had the "run of the apartment" with the result that it was messy when he arrived home in the evening.

When further describing her bizarre behavior, Forest related that Kimberly looked out of binoculars at other high-rise buildings, ate

baby food, and after a "stop-smoking" class, felt someone had drugged her water. Forest acknowledged, however, that throughout most of their lives, Kimberly had been a good mother to the children, bathing, cooking and managing their activities and schooling.

Forest's counsel argued that Kimberly's refusal to take prescribed medications caused problems and requested the court to order Dr. Jackson's deposition, stating that because he was no longer Kimberly's treating psychiatrist, deposing him would not interfere with the patient-physician privilege. The court agreed and ordered Dr. Jackson's deposition.

The court ordered that "until further order of court the status quo shall remain" and granted Forest temporary custody of the children and ordered supervised visitation based upon Kimberly's failure to take the prescribed medication. The court stated: "And I have observed Kimberly, but I am not a doctor. She seems to me to be able to care for her children and she doesn't seem to be under any problem at this time. If a doctor recommends that a patient take medication upon release from a mental ward, there is a good reason for it. And the fact that there is no problem today doesn't mean that there won't be a problem later." Given Forest's promise to provide housing, the court entered an order continuing his exclusive possession of the residence.

■ This court stayed enforcement of the trial court's orders pending the resolution of this interlocutory appeal. In Illinois, the confidentiality of patient-physician communications, and the medical records relating to the resulting treatment, are protected by the Mental Health and Developmental Disabilities Confidentiality Act (Ill. Rev. Stat. 1989, ch. 91½, par. 810) and the physician-patient privilege (Ill. Rev. Stat. 1989, ch. 110, par. 8—802). Information contained in such communications or records may be ordered under the specific exceptions listed in the statutes or after a conscious waiver of the privilege by the patient. *Gottemoller v. Gottemoller* (1976), 37 Ill. App. 3d 689, 695, 346 N.E.2d 393, 397.

■ "No physician or surgeon shall be permitted to disclose any information he or she may have acquired in attending any patient in a professional character, necessary to enable him or her professionally to serve such patient, except *** in all actions brought by or against the patient *** wherein the patient's physical or mental condition is an issue." (Ill. Rev. Stat. 1989, ch. 110, par. 8—802.) In the event of a conflict between this section and the Mental Health and Developmental Disabilities Confidentiality Act, the Mental Health and Developmental Disabilities Confidentiality Act shall control. Ill. Rev. Stat.

1989, ch. 110, par. 8—802.

■ The Mental Health and Developmental Disabilities Confidentiality Act provides that all records and communications shall be confidential and shall not be disclosed except as provided in the Act. (Ill. Rev. Stat. 1989, ch. 91½, par. 803(a).) The records and communications may be disclosed only with the written consent of the recipient. Ill. Rev. Stat. 1989, ch. 91½, par. 805(a)(3).

■ In any civil, criminal, administrative or legislative proceeding, or in any proceeding preliminary thereto, a recipient, and a therapist on behalf and in the interest of a recipient, has the privilege to refuse to disclose and to prevent the disclosure of the recipient's record or communications, except where the recipient introduces his or her mental condition or services received for such condition as an element of his or her claim or defense, and the court finds, after *in camera* examination of testimony or other evidence, that it is relevant, probative, not unduly prejudicial or inflammatory, and otherwise clearly admissible; that other satisfactory evidence is demonstrably unsatisfactory as evidence of the facts sought to be established by the evidence; and that disclosure is more important to the interests of substantial justice than protection from injury to the therapist-recipient relationship or to the recipient or other whom disclosure is likely to harm. Ill. Rev. Stat. 1989, ch. 91½, par. 810(a)(1).

■ In any action brought or defended under the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1989, ch. 40, par. 101 *et seq.*), however, mental condition shall not be deemed to be introduced merely by making such claim and shall be deemed to be introduced only if the recipient or witness on his behalf first testifies concerning the record or communication. (Ill. Rev. Stat. 1989, ch. 91½, par. 810(a)(1).) Any order to disclose or to not disclose shall be considered a final order for purposes of appeal and shall be subject to interlocutory appeal. Ill. Rev. Stat. 1987, ch. 91½, par. 810(b).

■ Forest argues that this appeal was improperly filed pursuant to Supreme Court Rule 307(a)(1). (107 Ill. 2d R. 307(a)(1).) We disagree and find that we have jurisdiction to review the orders directing the doctor's deposition and the production of the medical records, which, in effect, enjoin Kimberly and her physician from asserting their privilege. In addition, we will review the orders enjoining Kimberly from entering and residing in the marital home, and having custody of and unsupervised visitation with her children.

■ Most importantly, Kimberly did not first testify concerning the privileged communications or records. She did not introduce her mental condition into the proceedings. Rather, Kimberly and her coun-

sel tried to assert her right to confidentiality and her physician-patient privilege. Therefore, we reverse the order directing the deposition of Kimberly's psychiatrist, Dr. Carl Jackson, and the disclosure or production of the hospital records relative to her psychiatric treatment. We are not persuaded by the argument that since the physician-patient relationship had been terminated, the privilege no longer exists.

The statutory privilege is a legislative balancing between relationships which society thinks should be fostered through the shield of confidentiality and the interests served by disclosure of the information in court. The legislature has determined that, except for limited purposes, there is more value to encouraging and sustaining this kind of relationship. (*In re Westland* (1977), 48 Ill. App. 3d 172, 176-77, 362 N.E.2d 1153, 1156.) The beneficent purposes of psychiatry can only be fully realized when the patient knows that what is revealed in the evaluation conferences or communications are free from judicial scrutiny unless the patient affirmatively places her mental condition into issue. (*Tylitzki v. Triple X Service, Inc.* (1970), 126 Ill. App. 2d 144, 149, 261 N.E.2d 533, 536.) This patient-physician privilege should not be eroded by judicial construction. (*Tylitzki*, 126 Ill. App. 3d at 150.) We are mindful of the welfare of the children and note that psychiatric testimony deemed necessary in order to determine the best interests of the children may be obtained via the court-ordered psychiatric examination.

In addition to the trial court's failure to observe Kimberly's decision not to introduce her mental condition into the proceedings, the trial court did not comply with the other statutory requirements when it compelled the therapist's deposition and the production of the records. The record reveals that an *in camera* examination did not take place. There were no findings that the testimony and/or evidence was relevant, probative, not unduly prejudicial or inflammatory; that other satisfactory evidence was demonstrably unsatisfactory; and that disclosure was more important to the interests of substantial justice than protection from injury to the therapist-recipient relations or to the recipient. We cannot condone such disregard of the statutory mandate.

Similarly, the trial court erred when making the temporary child custody determination. The court may award temporary custody under the standards of section 602 and subsection (a) of section 602.1, after a hearing, or, if there is no objection, solely on the basis of the affidavits. (Ill. Rev. Stat. 1989, ch. 40, par. 603(a).) The standards within section 602 provide that the court shall determine custody in

accordance with the best interest of the child giving consideration to:

"(1) the wishes of the child's parent or parents as to his custody;

(2) the wishes of the child as to his custodian;

(3) the interaction and interrelationship of the child with his parent or parents, his siblings and any other person who may significantly affect the child's best interest;

(4) the child's adjustment to his home, school and community;

(5) the mental and physical health of all individuals involved; and

(6) the physical violence or threat of physical violence by the child's potential custodian, whether directed against the child or directed against another person but witnessed by the child." Ill. Rev. Stat. 1987, ch. 40, par. 602.

■■ The trial court failed to conduct a hearing in accordance with these statutory requirements. While specific findings of fact are not required under section 602, there must be some indication in the record that the court considered the various factors. (*In re Marriage of Slavenas* (1985), 139 Ill. App. 3d 581, 585, 487 N.E.2d 739, 741.) Here, there is no indication that the court considered the various factors. Virtually no evidence was adduced as to the children's best interests. Rather, the court awarded Forest temporary custody based upon Kimberly's failure to take medication. Since there was no fair or adequate consideration of all of the aforementioned factors, we reverse the order granting Forest temporary custody of the children and remand for a determination of temporary custody based upon the best interests of the children in accordance with the statutorily mandated considerations. Parenthetically, we note that when making a custody determination an important consideration is which parent provided the primary care to the children. *Cooper v. Cooper* (1986), 146 Ill. App. 3d 943, 951, 497 N.E.2d 805, 810.

Although we are remanding this matter for a determination of temporary custody, we will address the visitation issue. This discussion, however, in no way suggests which parent should be awarded custody or excludes the possibility of joint custody. Custody determinations are for the court below after consideration of the previously referred to proper factors.

■■ ■ Deficiencies occurred when the court ordered supervised visitation. "A parent not granted custody of the child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would endanger seriously the child's physical, mental,

moral or emotional health." (Ill. Rev. Stat. 1989, ch. 40, par. 607(a).) "The court *** shall not restrict a parent's visitation rights unless it finds that the visitation would endanger seriously the child's physical, mental, moral or emotional health." (Ill. Rev. Stat. 1989, ch. 40, par. 607(c).) The custodial parent bears the burden of proving by a preponderance of the evidence that visitation would seriously endanger the children. (*In re Marriage of Neat* (1981), 101 Ill. App. 3d 1046, 1048, 428 N.E.2d 1093, 1095.) The court must conduct a hearing on the issue of restricted visitation and grant supervised visitation only after making the extraordinary finding that visitation would endanger seriously the child's or children's physical, mental, moral or emotional health. *In re Marriage of Solomon* (1980), 84 Ill. App. 3d 901, 906, 405 N.E.2d 1289, 1293.

██ We find as a matter of law that the evidence of Kimberly's hospitalization and failure to take medication is insufficient to meet the onerous standard of serious endangerment, particularly in light of the absence of expert testimony that the medication was necessary to prevent her from harming herself or others, Forest's acknowledgment that Kimberly had been a good mother over the years, and Kimberly's testimony that she was not required to take the medication. (*In re Marriage of Johnson* (1981), 100 Ill. App. 3d 767, 427 N.E.2d 374.) Accordingly, we reverse the order providing for Kimberly's supervised visitation of her children.

██ The right to exclusive possession of the marital residence may be granted only upon the party's presentation of sufficient evidence that the "physical or mental well being of either spouse or their children is jeopardized by occupancy of the marital residence by both spouses, and only upon due notice and full hearing, unless waived by the court on good cause shown." Ill. Rev. Stat. 1989, ch. 40, par. 701.

██ We find that the evidence is insufficient, as a matter of law, to establish that the mental or physical well being of the parties or the children would be jeopardized by Kimberly's presence within the marital residence. (*In re Marriage of Hofstetter* (1981), 102 Ill. App. 3d 392, 430 N.E.2d 79.) Likewise, we find the evidence insufficient to establish a risk of abuse by Kimberly and/or that the balance of hardships favors Forest. Specifically, there is nothing in the record to support the October 24, 1989, finding of the trial court that: "The Court has considered the nature, frequency, severity, pattern and consequences of past abuse and the likelihood of future abuse to Petitioner or any member of Petitioner's or Respondent's family or household."

Additionally, we find no basis for the ruling that the harm that the protective order was intended to prevent would have been likely

to occur if respondent had been given prior notice or greater notice than that which was given, particularly because no evidence of harm was presented. The order prohibiting Kimberly from entering and calling her daughter's school was overly restrictive and not within the parameters of the court's discretion. Accordingly, we reverse the October 26, 1989, order and the October 24, 1989, protective order, granting, *inter alia*, exclusive possession of the marital residence, and remand for hearing in accordance with the statute.

In summation, we reverse the orders of October 24, 1989, and October 26, 1989, granting temporary custody, exclusive possession and supervised visitation; prohibiting Kimberly from entering and calling the school; directing Dr. Jackson's deposition; the production of the hospital records; and remand for hearing consistent with this opinion. The provision of the October 26, 1989, order granting the psychiatric examination pursuant to Supreme Court Rule 215(a) was not addressed on appeal and that provision of the order remains in effect.

Reversed and remanded.

CERDA, P.J., and FREEMAN, J., concur.