CHERYL ALMGREN, Plaintiff-Appellant, v. RUSH-PRESBYTERIAN-ST. LUKE'S MEDICAL CENTER, Defendant-Appellee.

First District (2nd Division)   No. 1—89—3263

Opinion filed December 8, 1992.

Karlin & Fleisher (Joel M. Kaplan and Charles E. Tannen, of counsel) and David A. Novoselsky & Associates (David A. Novoselsky and Tammy A. Koester, of counsel), both of Chicago, for appellant.

French, Kezelis & Kominiarek, P.C., of Chicago (Richard G. French, Russell P. Veldenz, and Randall J. Gudmundson, of counsel), for appellee.

JUSTICE McCORMICK delivered the opinion of the court:

Cheryl Almgren sued Rush-Presbyterian-St. Luke's Medical Center for malpractice based in part on the acts of Dr. Renee Mehlinger, a psychiatric resident who treated plaintiff at the hospital. Plaintiff brings an interlocutory appeal from an order permitting defendant's attorneys to have private discussions with Dr. Mehlinger.

On March 30, 1986, Dr. Mehlinger issued a pass to plaintiff, who was then a psychiatric in-patient in defendant's care, authorizing plaintiff to leave the hospital. According to the complaint, while plaintiff was out on the pass, she wandered aimlessly in a psychotic state

until she was struck by a Chicago Transit Authority (CTA) train in a subway station. She suffered severe injuries.

Plaintiff's attorney scheduled a deposition of Dr. Mehlinger, and prior to the deposition, defendant sought leave to conduct an *ex parte* interview of Dr. Mehlinger. The trial court granted defendant's motion, staying enforcement of the order pending this appeal.

The parties agreed that this court has jurisdiction over the interlocutory appeal under the Mental Health and Developmental Disabilities Confidentiality Act (hereinafter Act) (Ill. Rev. Stat. 1991, ch. 91½, par. 801 *et seq.*), which provides that any court order permitting or disallowing a therapist's disclosure of communications with a client "shall be considered a final order for purposes of appeal and shall be subject to interlocutory appeal." (Ill. Rev. Stat. 1991, ch. 91½, par. 810(b).) We questioned jurisdiction *sua sponte* in light of *Kmoch v. Klein* (1991), 214 Ill. App. 3d 185, 573 N.E.2d 267. In that case, the Appellate Court, Second District, found that the Act's provision for interlocutory appeal was an unconstitutional infringement upon the supreme court's rulemaking power. (*Kmoch*, 214 Ill. App. 3d at 194.) The parties have submitted supplemental briefs. Since the case involves a challenge to the constitutionality of a State statute, we notified the Attorney General of the State of Illinois, who decided not to brief the issue. We find that the Act does not conflict with supreme court rules since orders appealable under the Act are also appealable under Supreme Court Rule 307(a)(1) (134 Ill. 2d R. 307(a)(1)), which permits interlocutory appeals from orders granting or denying injunctions.

This court looks to the substance and effect of an order, not its form, to determine whether it is an appealable injunctive order. (*In re a Minor* (1989), 127 Ill. 2d 247, 260, 537 N.E.2d 292.) In *In re Marriage of Lombaer* (1990), 200 Ill. App. 3d 712, 558 N.E.2d 388, the trial court ordered the deposition of the petitioner's treating psychiatrist, and the petitioner took an interlocutory appeal. The appellate court found that it had jurisdiction to hear the appeal under Rule 307(a)(1) because the order effectively enjoined the petitioner from asserting her therapist-patient privilege. *Lombaer*, 200 Ill. App. 3d at 721.

The court in *Kmoch* rejected the reasoning of *Lombaer* based on *People ex rel. Scott v. Silverstein* (1981), 87 Ill. 2d 167, 429 N.E.2d 483. In *Silverstein* a defendant subpoenaed a reporter and the trial court denied the reporter's motion to quash. The reporter appealed and our supreme court found that it did not have jurisdiction under Supreme Court Rule 301 (73 Ill. 2d R. 301) to hear the appeal. The

court noted that the parties did not argue that Rule 307 applied. (*Scott*, 87 Ill. 2d at 171.) The court stated that discovery orders are not made appealable under Rule 307, explaining that "[p]reliminary orders in a pending case are not appealable because they are reviewable on appeal from the final order." (*Scott*, 87 Ill. 2d at 171.) The court did not attempt to define when an order with injunctive effect which also affected discovery would constitute a nonappealable discovery order and when it would constitute an injunction appealable under Rule 307.

Subsequently, in *In re a Minor*, the court explained that Rule 307 does not permit appeals from "[o]rders of the circuit court which can be properly characterized as 'ministerial,' or 'administrative'—because they regulate only the procedural details of litigation before the court." (*In re a Minor*, 127 Ill. 2d at 262.) The court held that when such ministerial orders have injunctive effect, they "may be considered noninjunctive because they *** do not affect the relationship of the parties in their everyday activity apart from the litigation, and are therefore distinguishable from traditional forms of injunctive relief." *In re a Minor*, 127 Ill. 2d at 262.

Thus, orders are ministerial discovery orders, and not appealable, when they have no effect apart from the litigation, and when they are effectively reviewable on appeal from the final judgment. If an order has injunctive effect on the parties apart from its effect on the litigation, and that effect cannot be undone if the order is erroneous, the order is not merely a preliminary discovery order, but rather an appealable injunction.

The plaintiff's privilege in this case cannot be effectively restored on review from the final judgment after trial. If this court lacks jurisdiction to consider her privilege now, defense counsel will conduct the *ex parte* interview with Dr. Mehlinger, in which Dr. Mehlinger may disclose information she gained from plaintiff in confidence because of the therapist-patient relationship. Once the doctor has made such disclosure permitted by the trial court's order, nothing this court can do can ever restore the complete confidentiality so essential to an effective treatment relationship between the therapist and her patient. See *Laurent v. Brelji* (1979), 74 Ill. App. 3d 214, 217, 392 N.E.2d 929.

Neither can plaintiff here appeal from the order in the manner suggested in *Silverstein* for obtaining review of discovery orders. The court there reminded the parties that "an order cast in terms of a contempt proceeding imposing sanctions is a final and appealable order and has been held to be an appropriate method for testing pretrial discovery orders." (*Silverstein*, 87 Ill. 2d at 171-72.) While the order

here prevents plaintiff from asserting her therapist-patient privilege, there are no acts plaintiff can take in defiance of the order, no matter how contemptuous of the court, to obtain review of the court's order in a contempt proceeding.

Therefore, the grounds asserted in *Silverstein* for denying appeal from preliminary discovery orders do not apply to this case. The order is not merely an administrative order which, if it is in error, this court can effectively correct on review from the final judgment; rather, once the therapist discloses the substance of her confidential conversations with her patient to any person outside of the therapeutic relationship, this court is powerless to undisclose the information. The order effectively enjoins plaintiff from asserting her therapist-patient privilege, and in the order the court denied plaintiff's request for an order which would have effectively enjoined defendant from conducting *ex parte* discussions with plaintiff's psychiatrist. Following *Lombaer*, we find that the injunctive effect renders this order appealable under Rule 307(a)(1). Insofar as *Kmoch* is inconsistent with *Lombaer*, we decline to follow *Kmoch*.

The reasoning we apply here is generally applicable to orders reviewable under section 10(b) of the Act. Any order permitting disclosure of a patient's confidences would in effect grant an injunction preventing the patient from asserting the privilege, and it would effectively deny an injunction preventing the therapist from disclosing the confidences. The order would not be effectively reviewable from a final judgment because the court cannot undisclose the confidences once disclosed. Hence, any order made reviewable under section 10(b) of the Act would be reviewable under Rule 307, so the statute does not conflict with the rules. "Where *** a legislative enactment expresses a public policy determination, having as its basis something other than the promotion of efficient judicial administration, our court has sought to reconcile conflicts between rules of the court and the statute." (*People v. Walker* (1988), 119 Ill. 2d 465, 475, 519 N.E.2d 890.) We hold that when the Act and the rules are properly understood, the Act does not conflict with the rules, so the Act is constitutional. (See *In re Marriage of Lentz* (1980), 79 Ill. 2d 400, 403 N.E.2d 1036.) Accordingly, we have jurisdiction to review the trial court's order.

Plaintiff contends that the order permitting the private interview must be reversed under the reasoning of *Petrillo v. Syntex Laboratories, Inc.* (1986), 148 Ill. App. 3d 581, 499 N.E.2d 952. The plaintiff in that case sued a drug manufacturer, and defendant sought *ex parte*

interviews with the physicians who treated plaintiff for the condition allegedly caused by defendant's drug. The court found:

> "[P]ublic policy strongly favors the confidentiality of the physician-patient relationship and thereby prohibits, because of the threat posed to the sanctity of that relationship, extra-judicial, *ex parte* discussion of a patient's medical confidences." (*Petrillo*, 148 Ill. App. 3d at 588.)

Although plaintiff there waived his physician-patient privilege by filing a suit in which his mental or physical condition was at issue, the waiver was

> "obviously and necessarily limited *** only to the release of his medical information (relative to the lawsuit) *pursuant to the methods of discovery authorized by Supreme Court Rule 201 (a)* (87 Ill. 2d R. 201(a))." (Emphasis in original.) (*Petrillo*, 148 Ill. App. 3d at 591.)

The court held that "discussions between defense counsel and a plaintiff's treating physician should be pursuant to the rules of discovery only." *Petrillo*, 148 Ill. 3d at 610.

In this case, unlike *Petrillo*, a statute specifically governs disclosure of plaintiff's mental condition, including information Dr. Mehlinger has received about that condition from any source. Defendant argues that it is permitted to discuss plaintiff's condition with Dr. Mehlinger, without plaintiff's consent or presence, under sections 9 and 10 of the Act. Section 9 of the Act permits a therapist to disclose otherwise privileged communications to:

> "(3) an attorney or advocate consulted by a therapist or agency which provides services concerning the therapist's or agency's legal rights or duties in relation to the recipient and the services being provided." Ill. Rev. Stat. 1991, ch. 91½, par. 809.

■ Defendant is no longer providing services to plaintiff, so the requested consultation cannot "concer[n] *** services being provided." This section provides no support for defendant's claim.

Disclosure for purposes of litigation, as opposed to disclosure for the continuing provision of services, is governed by section 10, which states:

> "(a) Except as provided herein, in any civil *** proceeding or in any proceeding preliminary thereto, a recipient *** has the privilege *** to prevent the disclosure of the recipient's record or communications.
>
> (1) Records and communications may be disclosed in a civil *** proceeding in which the recipient introduces his mental

condition or any aspect of his services received for such condition as an element of his claim \*\*\*, if and only to the extent the court in which the proceedings have been brought \*\*\* finds, after in camera examination of testimony or other evidence, that it is \*\*\* admissible [and] that other satisfactory evidence is demonstrably unsatisfactory as evidence of the facts sought to be established by such evidence \*\*\*.
\*\*\*

(3) In the event of \*\*\* an action filed by a recipient \*\*\* for injury caused in the course of providing services to such recipient, the therapist \*\*\* whose actions are alleged to have been the cause of injury may disclose pertinent records and communications to \*\*\* attorneys engaged to \*\*\* provide representation in connection with such matter \*\*\*, and may testify as to such records or communication in any \*\*\* discovery proceeding for the purpose of preparing and presenting a defense against such claim or action.
\*\*\*

(b) Before a disclosure is made under subsection (a), any party to the proceeding or any other interested person may request an in camera review of the record or communications to be disclosed." Ill. Rev. Stat. 1991, ch. 91½, par. 810.

■ This section, as it pertains to this case, restates *Petrillo*: It establishes defendant's undisputed right to discovery of information from Dr. Mehlinger through appropriate court-supervised discovery channels. Plaintiff waived her right to bar defendant from communicating with Dr. Mehlinger when she filed suit alleging negligence in Dr. Mehlinger's care for her. (*Pritchard v. Swedish-American Hospital* (1989), 191 Ill. App. 3d 388, 547 N.E.2d 1279.) This waiver gives Rush the right to formal discovery from Dr. Mehlinger. (See *Pritchard*, 191 Ill. App. 3d 388; *Petrillo*, 148 Ill. App. 3d 581.) The statute provides no support for a special right to a private interview with Dr. Mehlinger.

■ Insofar as defendant relies upon plaintiff's introduction of her mental condition into the case within the meaning of subparagraph (a)(1), the statute provides that the court must examine *in camera* all matters that Dr. Mehlinger will disclose prior to their disclosure in the civil proceeding. The subparagraph allows no separate right to a private disclosure, and the section allows no disclosures at all apart from the express exceptions listed in subparagraph (a). Subparagraph (a)(1) pertains to disclosures to be made by the therapist as a witness at trial; it does not directly pertain to defendant's request.

■ Subparagraph (a)(3) pertains to disclosures to be made by a therapist when the patient has filed a suit alleging that the therapist's acts have caused the patient harm. The statute provides that the therapist "may disclose pertinent records and communications to *** attorneys engaged to *** provide representation in connection with such matter." (Ill. Rev. Stat. 1991, ch. 91½, par. 810(a)(3).) This permitted disclosure remains subject to subparagraph (b), which provides that prior to disclosure under subparagraph (a), plaintiff has the right to request *in camera* review of the record or communications to be disclosed.

By making all disclosures permitted in subparagraph (a) subject to the right to request *in camera* review, the legislature established a further protection for the privacy of the patient's conversations with her therapist. The treating therapist possibly has information about plaintiff patient which is unrelated to the patient's case but potentially damaging to the patient. The statute establishes plaintiff patient's right to protection from unlimited disclosure from the therapist to the attorney representing the party opposing the patient. This protection is meaningless if the trial court may refuse to review the communications to be disclosed, or protect the patient in any manner, despite the possibility of the disclosure of matters harmful to the patient and unrelated to the case she has filed. Unless the court creates other safeguards to prevent disclosure to defendant's attorney of irrelevant matters potentially damaging to the patient, the court should not refuse a request for *in camera* review.

Dr. Mehlinger was plaintiff's therapist within the meaning of the Act. (Ill. Rev. Stat. 1991, ch. 91½, par. 802(9).) The Act establishes plaintiff's right to prevent disclosure from Dr. Mehlinger to defendant's attorney of information unrelated to the case but potentially damaging to plaintiff. That right cannot be protected if defendant's attorney is permitted private discussions with Dr. Mehlinger. The trial court could deny plaintiff's request for *in camera* review of disclosures made by Dr. Mehlinger to defense counsel, while achieving the purposes of the statute, if it found some other means of protecting plaintiff's right to limit disclosure of potentially damaging matters. Thus, the trial court could permit plaintiff, or her attorney, to be present at all discussions between defense counsel and Dr. Mehlinger, and order Dr. Mehlinger not to respond to any questions to which plaintiff objects until the court can decide whether the answer would compromise her right to prevent disclosure of irrelevant, potentially damaging matters. If the court chooses to provide no other protection, under the statute it must review all disclosures Dr. Mehlinger

makes *in camera*, by requiring defense counsel to communicate with Dr. Mehlinger only through the court.

■ Defendant argues that it would be "helpless to act" in this case if it were "prohibited from communicating" with Dr. Mehlinger. Plaintiff does not seek to prohibit such communication; she asks only for a restriction of such communication to formal discovery. Defendant in this case, as in *Petrillo*, does not point to any information it could obtain from private discussions with Dr. Mehlinger which it could not obtain through formal discovery. Defendant contends that an *ex parte* conversation will be "conducive to spontaneity and candor in a way depositions and formal discovery can never be." The Act is specifically designed to prevent too much spontaneity and candor in any therapist's discussions regarding a patient. Also, as the court stated in *Petrillo*:

> "[N]ot one court has found it necessary to permit *ex parte* conferences in order that the truth may be ascertained in a civil dispute. A rule barring *ex parte* conferences, therefore, does not stand in the way of discovering the truth; it merely regulates the discovery process so as to protect the confidential relationship existing between a patient and his treating physician. No 'truth' is kept out of court, for the treating physician, as we stated above, is free to testify as to his opinions and conclusions regarding the mental or physical condition placed at issue." *Petrillo*, 148 Ill. App. 3d at 606.

■ Defendant maintains that it needs the *ex parte* conferences to test its theories without divulging work product, and the conferences will be conducive to early settlement because they will aid in evaluating the case. The *Petrillo* court considered and rejected both of these arguments. Merely hearing the questions and answers at a deposition does not impermissibly allow plaintiffs to discover defense counsel's work product. (*Petrillo*, 148 Ill. App. 3d at 598.) It is not the *ex parte* conference itself, but rather the information learned in the conference, which facilitates early settlement, and defendant can obtain that information through formal discovery. *Petrillo*, 148 Ill. App. 3d at 601.

Defendant argues that *Petrillo* does not apply because plaintiff seeks to hold defendant liable, under a theory of *respondeat superior*, for Dr. Mehlinger's acts. Defendant asks this court to identify Dr. Mehlinger as the real client of defendant's attorney, so that denying it the right to private discussions with Dr. Mehlinger, under *Petrillo* and the Act, would be tantamount to denying Dr. Mehlinger the right to private discussions with her own attorney.

A hospital, like any corporation, can act only through its employees. The law identifies a corporation with various employees for various purposes. The acts of all employees performed in the course of employment are considered acts of the corporation when the corporation is sued in tort. When an attorney discusses potential litigation with employees of a corporation, only discussions between attorneys and members of the corporation's control group are protected by the attorney-client privilege under Illinois law. (*Consolidation Coal Co. v. Bucyrus-Erie Co.* (1982), 89 Ill. 2d 103, 432 N.E.2d 250.) Federal law extends the protection of the attorney-client privilege considerably further:

> "[A]n employee of a corporation, though not a member of its control group, is sufficiently identified with the corporation so that his communication to the corporation's attorney is privileged where the employee makes the communication at the direction of his superiors in the corporation and where the subject matter upon which the attorney's advice is sought by the corporation and dealt with in the communication is the performance by the employee of the duties of his employment." *Harper & Row Publishers, Inc. v. Decker* (7th Cir. 1970), 423 F. 2d 487, 491-92, aff'd *Decker v. Harper & Row Publishers, Inc.* (1971), 400 U.S. 348, 27 L. Ed. 2d 433, 91 S. Ct. 479, quoted in *Consolidation Coal*, 89 Ill. 2d at 115.

Our supreme court expressly rejected this test. (*Consolidation Coal*, 89 Ill. 2d at 117-18.) Illinois law identifies an employee with the corporation, for purposes of the attorney-client privilege,

> "if the employee *** is in a position to control or even to take a substantial part in a decision about any action which the corporation may take upon the advice of the attorney, or if he is an authorized member of a body or group which has that authority." (*City of Philadelphia v. Westinghouse Electric Corp.* (E.D. Pa. 1962), 210 F. Supp. 483, 485, quoted in *Consolidation Coal*, 89 Ill. 2d at 114.)

Our supreme court clarified that "an employee whose advisory role to top management in a particular area is such that a decision would not normally be made without his advice or opinion *** is properly within the control group." *Consolidation Coal*, 89 Ill. 2d at 120.

■ Dr. Mehlinger has never been a member of defendant's control group. Under Illinois law, she is not sufficiently identified with defendant for her conversations with defendant's attorney to be protected by attorney-client privilege. Similarly, we cannot identify her as the real client of defendant's attorney for this case, so that disallow-

ing *ex parte* communications between defendant's attorney and Dr. Mehlinger does not deprive Dr. Mehlinger, or defendant, of the right to private consultation with counsel. We express no opinion as to the proper result if the rights established by the Act directly conflicted with the right to private consultations with one's own attorney.

Defendant argues that its right to private discussions with Dr. Mehlinger is established by *Ritter v. Rush-Presbyterian-St. Luke's Medical Center* (1988), 177 Ill. App. 3d 313, 317-18, 532 N.E.2d 327, where the court stated:

> "When a patient seeks to hold a hospital vicariously liable for the negligence or malpractice of an employee-physician, exclusion of the hospital from the physician-patient privilege would, we believe, and as Rush argues, effectively prevent the hospital from defending itself by barring communication with the physician for whose conduct the hospital is allegedly liable."

The defendant in that case privately interviewed five of plaintiff's treating physicians before trial, and plaintiff moved to exclude their testimony due to the violation of the physician-patient privilege. The trial court granted the motion and the appellate court affirmed, finding exclusion of the testimony to be an appropriate sanction for the violation. In the quoted statement the court distinguished the facts of *Ritter* from hypothetical facts which would have affected the court's reasoning; since the statement relates to facts not present in *Ritter*, it is strictly *obiter dicta*.

In *Deberry v. Sherman Hospital Association* (N.D. Ill. July 29, 1991), No. 90—C—1173, the Federal district court without discussion relied upon the *dicta* in *Ritter* as an accurate statement of Illinois law, finding that attorneys for defendant hospital had a right to private conferences with the employees whose alleged acts were the basis of the malpractice suit against the hospital. The Federal memorandum opinion and the *dicta* in *Ritter* do not have the binding force of *Petrillo* or the Act, which did not pertain to either *Ritter* or *Deberry*.

We recognize that defense counsel's job is rendered more difficult by requiring counsel to restrict contact with Dr. Mehlinger to formal discovery. Plaintiff waived her physician-patient privilege when she filed suit against defendant, but under *Petrillo* and the Act, the waiver is only partial, permitting defendant only formal discovery from Dr. Mehlinger, and plaintiff has the right to insist upon court supervision of all communications pertaining to this case between defendant and Dr. Mehlinger. Since defendant has failed to show any meaningful distinction between this case and *Petrillo*, and because the Act by its own terms restricts discovery even where the therapist's

actions allegedly caused the patient's injuries, defendant is not permitted to hold private discussions with Dr. Mehlinger. The trial court's order must be reversed and the case remanded for court-supervised formal discovery.

Reversed and remanded.

HARTMAN, P.J., and SCARIANO, J., concur.