2020 IL App (2d) 190926-U
No. 2-19-0926
Order filed February 7, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | |
|---|---|
| COLLEEN EAMES, individually and as parent ) <br> and next friend of ANNASTACIA EAMES ) <br> and VALENTIA EAMES, ) <br> ) <br>     Plaintiff-Appellee, ) <br> ) <br> v. ) <br> ) <br> DIANE YAHIRO, ) <br> ) <br>     Defendant, ) <br> ) <br> and ) <br> ) <br> PATRICIA MASEK, ) <br> ) <br>     Movant-Appellant. ) | Appeal from the Circuit Court <br> of Du Page County. <br><br><br><br><br><br> No. 17-CH-193 <br><br><br><br><br><br><br><br> Honorable <br> Paul M. Fullerton, <br> Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Justices Zenoff and Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Appeal dismissed for lack of jurisdiction.

¶ 2 Plaintiff, Colleen Eames, individually and as parent and next friend of Annastacia Eames and Valentina Eames (her daughters), sued defendant, Diane Yahiro,[1] her sister, seeking review of her actions as agent for Patricia Masek, the parties' mother, whom she alleged had significant memory loss and cognitive decline. 755 ILCS 45/2-10(a) (West 2018). Colleen sought an injunction, preventing Diane from hindering Colleen's communication with, and access to, Patricia; a finding that Diane breached her fiduciary duties as Patricia's agent; and Diane's removal as such. Pursuant to Colleen's request, the trial court entered a qualified protective order under the Health Insurance Portability and Accountability Act of 1996 (HIPAA) (Pub. L. No. 104-191, § 264, 110 Stat. 1936 (1996)) rules addressing disclosure of protected health information (45 C.F.R. § 164.512(e) (2016) (authorizing production of records containing protected health information if the party seeking production requests a protective order)), authorizing the parties to subpoena Patricia's protected health information. In a limited-scope appearance, Patricia, asserting her physician-patient privilege (735 ILCS 5/8-802 (West 2018)), moved to enjoin Colleen from seeking subpoenas for her medical records. The trial court denied the motion. Patricia appeals, arguing that the trial court erred in denying injunctive relief, where it failed to apply to her medical records the physician-patient privilege. We dismiss the appeal for lack of jurisdiction.

¶ 3                                    I. BACKGROUND

¶ 4 On February 2, 2017, Colleen, who resides in Nebraska, filed her initial complaint against her sister, Diane, who resides in Du Page County. In a single-count amended complaint, filed on

---

[1] Various portions of the record contain the alternative spelling of "Dianne" for defendant. For consistency, we use "Diane."

March 27, 2018, Colleen sought review of Diane's conduct as Patricia's agent and requested appropriate relief under section 2-10(a) of the Illinois Power of Attorney Act (Act) (755 ILCS 45/2-10(a) (West 2018) (allowing any interested person to petition the trial court, upon a finding that the principal lacks capacity to control or revoke the agency, to construe a power of attorney, review the agent's conduct, and grant appropriate relief, including compensatory damages). Colleen alleged that Diane was acting as Patricia's agent under Patricia's purported power of attorney for health care, dated February 22, 2016, a copy of which she attached to her amended complaint.[2]

¶ 5    Colleen further alleged that, in 2011, Patricia, who lived in Nebraska with her son, Richard Masek (who has autism and developmental/intellectual disabilities), had undergone testing that revealed significant memory loss and cognitive decline and she was prescribed dementia/Alzheimer's medication. According to Colleen, in February 2014, to Colleen's surprise, Diane and her husband removed Patricia and Richard from their Nebraska home and moved them to Diane's home in Downers Grove, where they have since resided. Since that time, Diane has been Patricia's caretaker and primary decisionmaker.

¶ 6    In 2014, Patricia was in the moderate-to-late stages of Alzheimer's disease, suffered from severe short-term memory loss, and needed a caregiver. Colleen alleged that, at this time, Diane

---

[2] Twice previously, Diane had acted as Patricia's agent under purported powers of attorney for health care, dated January 27, 2016, and July 18, 2015. She had also acted as Patricia's agent under Patricia's purported durable power of attorney, dated July 17, 2015, and another such document dated November 27, 2013. Prior to the execution of the health care powers of attorney, Patricia had named Colleen as agent under her January 29, 2008, power of attorney for health care.

admitted that she wanted Colleen and her family to be with Patricia as much as possible, but was concerned that Colleen would attempt to move Patricia and Richard back to Nebraska and, thus, would not allow Colleen to visit alone with them. Prior to her removal from Nebraska, Patricia had frequent and positive interactions with Colleen and her family. Following her removal from Nebraska, Patricia has had limited interaction with Colleen and her family, according to Colleen, due to Diane's involvement, conduct, and decisions she has made for Patricia. Colleen further alleged that Patricia's estrangement and isolation from her and her family (and other family members and friends) directly result from Diane's involvement, conduct, and decisions made for Patricia and influence on her. Colleen alleged that she and others have attempted to visit and communicate with her mother, but have not received any reply.

¶ 7     Colleen further asserted that, as agent for Patricia, Diane undertook a fiduciary duty to her and is required to act in Patricia's best interests. Colleen argued that Diane breached that duty by prohibiting her mother from visiting or communicating with Colleen and her family and caused Patricia to have mistaken or delusional views concerning Colleen in order to perpetuate the estrangement and isolation fostered by Diane, all of which were contrary to Patricia's true wishes and desires (as expressed, in part, in her deposition taken in one of the family's Nebraska trust-related cases). Colleen further asserted that Diane's conduct was not in Patricia's best interests, and the harm therefore was irreparable in the absence of an injunction. Diane was not acting in Patricia's best interests, and Patricia's desire to visit and communicate with her, Colleen asserted, showed that Colleen was likely to be successful on the merits of her claim. She also argued that no adequate legal remedy existed, because the matter involved family visitation and communication, Diane's decision-making, and Patricia's diagnoses and declining health.

¶ 8    Colleen sought an order: (1) preliminarily enjoining Diane from preventing or hindering Patricia from reasonable access, visitation, and communication with Colleen and her grandchildren; (2) directing Diane to allow Colleen reasonable access to, visitation, and communication with Patricia (and vice versa); (3) finding that Diane breached her fiduciary duties (as agent) to Patricia and failed to appropriately act as Patricia's agent pursuant to section 2-10 of the Act; (4) removing Diane as Patricia's agent; (5) granting judgment in Colleen's favor; (6) permanently enjoining Diane from prohibiting, preventing, or otherwise hindering Patricia from reasonable access, visitation and communication with Colleen; and (7) attorney fees and costs.

¶ 9    In her answer, Diane asserted that the decision to move to her home was Patricia's. She also denied that she was Patricia's decisionmaker and denied that Patricia lacked capacity to handle her personal and financial affairs. Diane also asserted that she had not hindered Patricia from communicating with Colleen, argued that Patricia's deposition testimony was taken out of context, and denied that Patricia desired to communicate with Colleen.

¶ 10    On June 22, 2018, Diane moved for summary judgment, asserting that, since January 15, 2018, Patricia no longer resided in Illinois and, on May 29, 2018, Patricia had discharged Diane as agent under her healthcare power of attorney. (She attached her affidavit attesting to this, along with a copy of a letter purportedly from Patricia informing her that her power of attorney had been revoked and a new agent assigned. She did *not* attach a copy of any new power of attorney for healthcare.) Diane argued that, pursuant to section 2-10 of the Act, the court had jurisdiction to adjudicate the case only if a principal had appointed an agent and the principal either cannot control or revoke the agency. Based upon the termination of the healthcare power of attorney, she contended, there was no genuine issue of material fact but that Patricia had the ability to terminate the power of attorney and had done so.

¶ 11    On March 12, 2019, the court denied Diane's summary-judgment motion "for the reasons stated on the record." The record on appeal does not contain a report of proceedings from the hearing.

¶ 12    Subsequently, on August 1, 2019, Colleen moved for entry of a protective order pursuant to Illinois Supreme Court Rule 201(c)(1) (eff. May 29, 2014) (allowing courts to regulate discovery "to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or oppression") and the HIPAA rules addressing disclosure of protected health information (45 C.F.R. § 164.512(e) (2016) (authorizing production of records containing protected health information if the party seeking production requests a protective order)). She asserted that assessment of Patricia's capacity to revoke or control Diane's conduct as her agent was required in assessing whether Diane breached her duties to Patricia. Colleen argued that Patricia's medical records would likely lead to the discovery of admissible evidence concerning her capacity to control her agent's conduct. Colleen asserted that she intended to issue subpoenas for the production of records related to Patricia's medical treatment, which would include protected health information under HIPAA, and desired a protective order to comply with the statute and protect against unauthorized disclosure of private and/or confidential medical information and to prevent abuse of any information by the subpoenaed entities.

¶ 13    Colleen served Diane's counsel with a copy of the motion and a notice of motion, setting the matter for presentation on August 6, 2019, but Patricia was not served with a notice or a copy of the motion. Diane did not file a response to the motion.

¶ 14    On August 6, 2019, the trial court, noting in its written order that Patricia's counsel had approached but did *not* file an appearance, granted Colleen's motion for a qualified HIPAA order, set October 11, 2019, as the discovery cutoff, and continued the case for status on October 15,

2019. On August 8, 2019, the trial court entered the qualified HIPAA protective order, pursuant to Rule 201(c)(1), federal regulations, and the Mental Health and Developmental Disabilities Confidentiality Act (740 ILCS 110/1 *et seq.* (West 2018)). The order authorized the parties to receive, subpoena, and transmit Patricia's protected health information in a manner reasonably connected with this case. The following day, Patricia retained counsel, Douglas Drenk.

¶ 15    On August 20, 2019, Colleen served Diane with a notice of subpoenas, noting that subpoenas of Patricia's healthcare providers *were being served that day via certified mail*. Notice was apparently not sent to Patricia. On August 21, 2019, Drenk filed on Patricia's behalf a notice of limited scope appearance pursuant to Illinois Supreme Court Rule 13(c)(6) (eff. July 1, 2017) for the purpose of protecting the privacy of Patricia's medical records. (Patricia's son, Mark, signed the notice as agent for legal matters on Patricia's behalf.)

¶ 16    Also on August 21, 2019, Patricia (through Drenk) moved to enjoin Colleen from seeking the issuance of any subpoenas relating to her medical records. Patricia asserted her physician-patient privilege (735 ILCS 5/8-802 (West 2018)), which, she argued, applies to nonparties, and further maintained that the privilege was not preempted by HIPAA because she was a non-party to the litigation. Patricia sought an order "[d]ismissing" Colleen's motion for a protective order over her medical records and an order that enjoined Colleen from issuing subpoenas for her medical records.

¶ 17    In response, Colleen asserted that the court had already ruled on the issue when (on August 6, 2019) it granted Colleen's motion for protective order and subsequently (on August 8, 2019) entered the HIPAA order, authorizing the issuance of subpoenas. She noted that Patricia never pursued a motion to reconsider (or an appeal) and never moved to quash the subpoenas previously issued; thus, her argument was forfeited. She also asserted that arguments concerning Patricia's

medical privacy were sufficiently covered by the court's protective order. Colleen also argued that equity demanded that Patricia's motion be denied, because she remained in contempt of court in separate guardianship proceedings (in Du Page County). She further argued that Patricia's medical records were relevant, because her medical condition was an issue in this case. Finally, Colleen offered to withdraw the subpoenas if Patricia sat for a deposition.

¶ 18 On October 10, 2019, the trial court held a hearing on several matters and entered an order that: (1) denied Patricia's motion to enjoin Colleen from seeking issuance of subpoenas relating to her medical records[3]; (2) granted Colleen's motion to extend time for discovery, which was extended to December 6, 2019; and (3) took under advisement Colleen's petition for rule to show cause against Patricia (for failure to comply with a subpoena for a deposition). The court continued the case to December 12, 2019, for status. In denying Patricia's motion to enjoin Colleen from subpoenaeing her medical records, the court noted at the hearing, "We entered a protective order some time ago. I understand your arguments. Most of them, if not all of them, are that she's a non-party. There's a physician-patient privilege involved. But the issue in this case, the medical records may be relevant and we have a protective order. So I'm denying your motion." The court also noted that the sole issue in the case is whether Diane exercised authority as an agent. Patricia appeals.[4]

---

[3] Colleen served seven subpoenas via certified mail on August 20, 2019. Patricia filed her motion to enjoin the following day. As noted, the court did not rule on Patricia's motion until October 10, 2019.

[4] On November 12, 2019, the trial court denied Patricia's motion, filed November 4, 2019, for a stay pending appeal. On November 14, 2019, Patricia moved in this court for a stay pending

¶ 19                                    II. ANALYSIS

¶ 20    We first review our jurisdiction over this appeal.  Patricia filed this appeal pursuant to Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017) (interlocutory appeals as of right; appeal from an interlocutory order "granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction") within 30 days of the trial court's order denying her motion to enjoin Colleen from seeking the issuance of subpoenas relating to her medical records (and wherein she had requested dismissal of Colleen's motion for a protective order over her medical records and an order that enjoined Colleen from issuing subpoenas for her medical records).  The HIPAA protective order limits the use of Patricia's protected health information to this litigation and requires the return or destruction of the records at the end of the litigation.

¶ 21    In her appellee's brief, Colleen argues that the October 10, 2019, order denying Patricia's motion is not an *injunctive* order, but a *discovery* order from which interlocutory appeal cannot be taken; thus, in her view, this court lacks jurisdiction to hear Patricia's appeal.  Colleen contends that, regardless of how Patricia labeled her motion, it substantively sought to quash subpoenas Colleen issued to Patricia's medical providers.  Orders regarding preliminary discovery, she notes, such as the denial of a motion to quash, are not final orders and, therefore, are not appealable. *Kmoch v. Klein*, 214 Ill. App. 3d 185, 191 (1991).  Colleen argues that, notwithstanding Patricia's attempt to couch the denial of her motion as injunctive in order to fall under Rule 307's scope, it remains that discovery orders are not appealable under Rule 307. *Id.* at 192.

¶ 22    In *Kmoch*, this court dismissed, for lack of jurisdiction, an appeal from two interlocutory orders denying the defendant's motions to quash deposition subpoenas sought pursuant to a

_____

appeal.  We granted the motion on December 3, 2019.

mental-health confidentiality statute. *Id.* at 192. The individuals whose depositions the plaintiff sought to take had treated the defendant in relation to another court proceeding. This court held that the orders were not final, but interlocutory, "made as preliminary discovery orders in a pending suit." *Id.* at 191. They were not appealable, "because they are reviewable on appeal from the final order." *Id.* The treaters could either obey or defy the order and, if it resulted in a contempt finding, such judgment would be a final and appealable order. *Id.* Turning to Rule 307, this court declined to follow *In re Marriage of Lombaer*, 200 Ill. App. 3d 712, 721 (1990), a case on which Patricia relies, which had held that the reviewing court had jurisdiction under Rule 307 to address an appeal from orders directing the discovery deposition of a medical provider pursuant to a mental-health confidentiality statute. The *Lombaer* court had characterized the orders as effectively enjoining a party and her physician from asserting their privilege. *Id.* at 192 (quoting *Lombaer*, 200 Ill. App. 3d at 721). In *Kmoch*, this court instead followed supreme court precedent that, addressing the rules for interlocutory orders, determined that " '[d]iscovery orders are not made appealable under the provisions of these rules.' " *Id.* (quoting *People ex rel. Scott v. Silverstein*, 87 Ill. 2d 167, 171 (1981)). We also found support for our conclusion in the practice notes to Rule 307, which provided that, even though they have injunctive qualities, discovery orders are not reviewable under the rule. *Id.* at 192-93 (quoting Ill. Ann. Stat., ch. 110A, par. 307, Historical & Practice Notes, at 263 (Smith-Hurd 1985)).

¶ 23    In her reply brief, Patricia maintains that this court has jurisdiction to review the denial of injunctive relief to prohibit disclosure of her medical records protected under the physician-patient privilege. She argues that *Kmoch* is distinguishable because it involved a *party* defendant's appeal under a mental-health confidentiality statute and that she, in contrast, is a *non-party*. She also argues that we should decline to follow *Kmoch*, where it does not state that a *non-party* is

prohibited from seeking interlocutory appeal from the denial of injunctive relief to prevent unauthorized disclosure of the non-party's private medical records protected from disclosure by the non-party's invocation of the statutory physician-patient privilege. Patricia also contends that she cannot refuse to comply with or defy the discovery order granting Colleen's motion for a protective order (or the resulting HIPAA order) in order to be held in contempt as a means of seeking immediate appellate review prior to a final judgment after trial. She also asserts that *she herself* cannot defy the subpoenas issued to her healthcare providers. Her privilege, she notes, cannot be restored on review from a final judgment after trial.

¶ 24    We agree with Colleen that we lack jurisdiction over this appeal. In *Almgren v. Rush-Presbyterian-St. Luke's Medical Center*, 162 Ill. 2d 205 (1994), the supreme court reaffirmed the holding in *Silverstein* that pretrial discovery orders are not appealable under the Illinois Supreme Court Rules governing interlocutory appeals. *Id.* at 211. "Although such orders may have the qualities of an injunction in the sense that they compel the parties to do or not do a particular thing, they are considered noninjunctive 'because they [do] not form part of the power traditionally reserved to courts of equity, but, instead, [are] part of the inherent power possessed by any court to compel witnesses to appear before it and give testimony.' " *Id.* (quoting *In re A Minor*, 127 Ill. 2d 247, 262 (1989)). Discovery orders "are subject to review, but they are not immediately appealable because they are reviewable on appeal from the final judgment." *Id. Almgren* was a medical malpractice case brought against a hospital, and the hospital's counsel sought to conduct an *ex parte* interview with one of the plaintiff's treating physicians. The supreme court rejected the appellate court's reasoning that the trial court's order had the effect of *enjoining* the plaintiff from asserting her patient-therapist privilege under a mental-health confidentiality statute. *Id.* at 210-11. Specifically, it rejected the court's attempt to ignore *Silverstein* on the basis that, once the

interviews were conducted and confidential information about the plaintiff was disclosed, any post-judgment appeal would be meaningless. *Id.* at 211. According to the supreme court, the plaintiff's right to complete confidentiality was lost when she filed her suit. *Id.* Also, the supreme court noted that *Silverstein* also involved a privilege (a newspaper reporter's assertion of the reporter's privilege statute). *Id.* at 212. The court agreed with this court's conclusion in *Kmoch* that the same result as in *Silverstein* applied in the case before it, which involved a mental-health confidentiality statute. *Id.*

¶ 25 Although *Silverstein* involved motions to quash a discovery deposition subpoena and a document-production request, it is relevant here for two reasons. First, it involved a non-party, which is the same as this appeal. Second, Patricia's motion to enjoin Colleen from seeking the issuance of subpoenas relating to her medical records is, in essence, a motion to quash subpoenas of documents, the same scenario as in *Silverstein*, and, we believe, warranting the same result in this case.

¶ 26 Furthermore, we believe that Patricia is not so removed from this litigation as to accurately be characterized as a non-party. Colleen brought her suit under the Act so that the trial court could assess Diane's execution of her agency over Patricia. 755 ILCS 45/2-10(a) (West 2018) (allowing an interested person, including a descendant, to petition for a finding that the principal lacks capacity to control or revoke the agency, and allows the trial court to construe a power of attorney and review the agent's conduct). But the statute further requires the trial court to first determine "that the principal lacks either the capacity to control or the capacity to revoke the agency." *Id.* Thus, the litigation concerns not only Diane, but also Patricia (more specifically, Patricia's capacity as to the agency). Patricia's argument that her status as a non-party should render appealable the court's interlocutory discovery order fails. The trial court's denial of Patricia's

motion was a pretrial order concerning discovery, which the case law holds is not appealable under the rules governing interlocutory appeals.

¶ 27    We also reject Patricia's argument that she herself cannot disobey the subpoenas, which were issued to her healthcare providers, so as to trigger a contempt finding, which, in turn, would be appealable.  Patricia's inability to seek immediate appeal from a contempt finding is not a reason to ignore supreme court precedent.

¶ 28    In summary, we lack jurisdiction over this appeal.

¶ 29                                III. CONCLUSION

¶ 30    For the reasons stated, we dismiss this appeal for lack of jurisdiction.

¶ 31    Appeal dismissed.