(No. 74831, 74897 cons.—

CHERYL ALMGREN, Appellee, v. RUSH-PRESBYTERIAN-ST. LUKE'S MEDICAL CENTER, Appellant.—JUDITH TESTIN et al., Appellees, v. DREYER MEDICAL CLINIC et al. (Dreyer Medical Clinic, Appellant).

*Opinion filed May 19, 1994.—Modified on denial of rehearing November 15, 1994.*

NICKELS, J., took no part.
McMORROW, J., dissenting.

George F. Galland, Jr., of Davis, Miner, Barnhill & Galland, P.C., Hugh C. Griffin and Diane I. Jennings, of Lord, Bissell & Brook, and Alfred C. Tisdahl, Jr., and Randall J. Gudmundson, of French, Kezelis & Kominiarek, all of Chicago, for appellant.

Ronald G. Fleisher and Charles E. Tannen, of Karlin & Fleisher, of Chicago (David A. Novoselsky and Linda A. Bryceland, of David A. Novoselsky & Associates, of counsel), for appellee.

Howard C. Ryan, William K. McVisk and Nicholas Anaclerio, Jr., of Peterson & Ross, of Chicago, for *amici curiae* CGH Medical Center *et al.*

Thaddeus J. Nodzenski and Mark D. Deaton, of Naperville, for *amici curiae* Illinois Hospital Association *et al.*

Timothy J. Ashe, Rudolf G. Schade, Jr., and Lynn D. Dowd, of Cassidy, Schade & Gloor, of Chicago, for *amicus curiae* Metropolitan Chicago Healthcare Council.

Bruce Robert Pfaff, of Chicago, for *amicus curiae* Illinois Trial Lawyers Association.

Stephen R. Swofford and Bruce L. Carmen, of Hinshaw & Culbertson, of Chicago, for *amicus curiae* Appellate Lawyers Association.

Rosalyn B. Kaplan, of Chicago, for *amicus curiae* Attorney General of the State of Illinois.

O'Reilly, Cunningham, Norton & Mancini, of Wheaton (William F. Cunningham and Mary A. Strunk, of counsel), for appellant.

John M. Lamont, of Thompson, Lamont & Flaherty, P.C., of Aurora, for appellees.

Stephen R. Swofford and Bruce L. Carmen, of Hinshaw & Culbertson, of Chicago, for *amicus curiae* Appellate Lawyers Association.

Rosalyn B. Kaplan, of Chicago, for *amicus curiae* Attorney General of the State of Illinois.

JUSTICE HARRISON delivered the opinion of the court:

Before us are two medical malpractice actions which have not yet gone to trial. In each case, defense counsel filed a pretrial discovery motion to obtain authorization to conduct *ex parte* interviews with one of the plaintiff's treating physicians. In cause No. 74831, the motion to interview was granted, but the appellate court subsequently reversed after holding that it had jurisdiction to proceed. (240 Ill. App. 3d 585.) In cause No. 74897, the motion was denied, and one of the defendant's attorneys

was held in contempt after he advised the court that he intended to disregard the court's order and to go forward with the interview. Although the attorney did not appeal, his client did. The appellate court affirmed, again concluding that it possessed the requisite jurisdiction to proceed. (238 Ill. App. 3d 883.) We granted defendants leave to appeal in both cases (134 Ill. 2d R. 315) and consolidated the cases for argument and opinion. For the reasons which follow, we now hold that the appellate court erred in each case when it concluded that it had jurisdiction to review the merits of the circuit courts' orders. The appellate court's judgments are therefore vacated, and the appeals are dismissed.

The facts necessary to our disposition are not in dispute. In cause No. 74831, Cheryl Almgren filed an action in the circuit court of Cook County to recover damages for personal injuries she sustained as the result of medical malpractice allegedly committed by Rush-Presbyterian-St. Luke's Medical Center. According to Almgren's complaint, she was hospitalized at the Medical Center for treatment and services related to a mental disorder. Almgren was known to be self-destructive and had a history of suicide attempts, so she was maintained in a locked ward. In what Almgren contends was a breach of the usual and customary standards of medical care, the Medical Center released her on a one-day pass on March 30, 1986. The pass required her to return to the Medical Center at 6 p.m., but she failed to do so. Instead, she claims, she wandered the streets of Chicago "aimlessly in a psychotic state" until she was struck and seriously injured by a Chicago Transit Authority train.

The one-day pass was issued to Almgren by Dr. Mehlinger-Mitchell. Mehlinger-Mitchell was a psychiatric resident at the Medical Center at the time of Almgren's admission to the facility, but is no longer employed

there. During the course of pretrial discovery, the Medical Center moved the court for an order permitting it and its attorneys to conduct *ex parte* interviews with Mehlinger-Mitchell. That motion was granted, and Almgren took an immediate interlocutory appeal.

In reversing the circuit court's order, the appellate court *sua sponte* raised the issue of whether it had jurisdiction to consider the appeal. There is no dispute that this was proper, for the appellate court has an independent duty to consider its jurisdiction before proceeding to the merits of the case. When jurisdiction is lacking, the court must dismiss the appeal on its own motion. (See *Mirly v. Basola* (1991), 221 Ill. App. 3d 182, 185.) Although the appellate court here satisfied itself that the requisite jurisdiction existed, its conclusion cannot stand.

Article VI, section 6, of the 1970 Illinois Constitution provides that final judgments may be appealed as a matter of right from the circuit court to the appellate court. (Ill. Const. 1970, art. VI, § 6.) There is no corresponding constitutional right to appeal from interlocutory orders of the circuit court. Rather, article VI, section 6, vests this court with the authority to provide for such appeals, by rule, as it sees fit. (Ill. Const. 1970, art. VI, § 6.) Except as specifically provided by those rules, the appellate court is without jurisdiction to review judgments, orders or decrees which are not final. *Flores v. Dugan* (1982), 91 Ill. 2d 108, 112.

Pursuant to its constitutional authority to provide for appeals from other than final judgments, this court has adopted Rules 306, 307, and 308 (134 Ill. 2d Rules 306, 307, 308). The appellate court in this case attempted to place the circuit court's order within the ambit of Rule 307(a)(1) (134 Ill. 2d R. 307(a)(1)), which relates to injunctions, on the theory that it had the effect of enjoining Almgren from asserting her patient-therapist

privilege under the Mental Health and Developmental Disabilities Confidentiality Act (Ill. Rev. Stat. 1991, ch. 91¹/₂, par. 801 *et seq.*). This argument is untenable. In *People ex rel. Scott v. Silverstein* (1981), 87 Ill. 2d 167, 171, this court expressly held that pretrial discovery orders are not made appealable by Rules 306, 307 or 308. Although such orders may have the qualities of an injunction in the sense that they compel the parties to do or not to do a particular thing, they are considered noninjunctive "because they [do] not form part of the power traditionally reserved to courts of equity, but, instead, [are] part of the inherent power possessed by any court to compel witnesses to appear before it and give testimony." (*In re A Minor* (1989), 127 Ill. 2d 247, 262.) Such orders are subject to review, but they are not immediately appealable because they are reviewable on appeal from the final judgment. *Silverstein*, 87 Ill. 2d at 171.

Although it acknowledged the applicability of these principles to normal discovery orders, the appellate court held that the potential threat to Almgren's privilege should take this case out of the *Silverstein* rule. The appellate court reasoned that once the interviews are allowed to proceed and confidential information about Almgren is disclosed, any post-judgment appeal would be meaningless, for the appellate court could never restore "the complete confidentiality so essential to an effective treatment relationship between the therapist and her patient." 240 Ill. App. 3d at 590.

The problem with this rationale is that Almgren's right to complete confidentiality was already lost by the time Rush moved for leave to conduct the interviews. As the appellate court itself acknowledged (240 Ill. App. 3d at 593), Almgren waived her right to bar Rush from communicating with Dr. Mehlinger-Mitchell when she filed suit against the hospital based on Mehlinger-

Mitchell's alleged negligence in treating her mental condition. (Ill. Rev. Stat. 1991, ch. 91$^{1}$/$_{2}$, par. 810.) At this point the fact that confidences may be disclosed must therefore be accepted as a given. The only question now is under what circumstances and to what extent disclosure should be permitted.

The appellate court's analysis must also fail because it overlooks that this court's decision in *Silverstein* itself involved a claim of privilege. In that case one of the defendants subpoenaed a newspaper reporter for his deposition and for the production of certain documents. The reporter moved to quash, contending, *inter alia*, that enforcement of the subpoena would violate the reporter's privilege act (Ill. Rev. Stat. 1979, ch. 51, par. 111 *et seq.*). That motion was denied, and, on appeal, the appellate court found that the order was final and appealable under Supreme Court Rule 301 (73 Ill. 2d R. 301). This court reversed, holding that the circuit court's order, made as a preliminary discovery order in a pending suit, was interlocutory in nature and not subject to review under Rule 301. As previously discussed, the court further held that such discovery orders are not made appealable under the provisions of Supreme Court Rules 306, 307, or 308 (73 Ill. 2d Rules 306, 307, 308). Although the case now before us involves a claim of privilege under the Mental Health and Developmental Disabilities Confidentiality Act (Ill. Rev. Stat. 1991, ch. 91$^{1}$/$_{2}$, par. 801 *et seq.*), rather than the reporter's privilege act, we agree with the conclusion of the appellate court in *Kmoch v. Klein* (1991), 214 Ill. App. 3d 185, that the same result applies. The challenged order is not a final judgment within the meaning of article VI, section 6, of the 1970 Illinois Constitution (Ill. Const. 1970, art. VI, § 6), and is not among the interlocutory orders made appealable by Supreme Court Rules 306, 307, and 308 (134 Ill. 2d Rules 306, 307, 308).

A question then remains as to whether jurisdiction was nevertheless proper in the appellate court by virtue of section 10(b) of the Mental Health and Developmental Disabilities Confidentiality Act (Ill. Rev. Stat. 1991, ch. 91$^{1}$/$_{2}$, par. 810(b)). Under that statute, any order to disclose or not to disclose communications and records protected by the patient-therapist privilege is "considered a final order for purposes of appeal and shall be subject to interlocutory appeal." (Ill. Rev. Stat. 1991, ch. 91$^{1}$/$_{2}$, par. 810(b).) If valid, this legislation would make appealable orders which would not otherwise qualify as final judgments and which would not otherwise be appealable under supreme court rules. This court has previously held, however, that attempts by the legislature to make nonfinal judgments appealable violate article VI, section 6, of our constitution (Ill. Const. 1970, art. VI, § 6). (*People v. Partee* (1988), 125 Ill. 2d 24, 32.) By that constitutional provision, the power to authorize appeals from other than final judgments is vested exclusively in this court. (See *In re Marriage of Lentz* (1980), 79 Ill. 2d 400, 406-07.) To the extent that section 10(b) of the Mental Health and Developmental Disabilities Confidentiality Act (Ill. Rev. Stat. 1991, ch. 91$^{1}$/$_{2}$, par. 810(b)) attempts to provide for appeals from less than final judgments, it is therefore an unconstitutional infringement by the legislature upon the rulemaking power of this court. (See *Kmoch v. Klein* (1991), 214 Ill. App. 3d 185, 194; *People v. Phipps* (1979), 79 Ill. App. 3d 532, 537, *rev'd on other grounds* (1980), 83 Ill. 2d 87.) Because the appellate court thus lacked any legitimate basis for exercising jurisdiction over this matter, its judgment in cause No. 74831 is vacated, and the appeal is dismissed.

We turn then to cause No. 74897. In that case, Judith Testin filed an action to recover damages for personal injuries she sustained as the result of medical

malpractice allegedly committed by Dreyer Medical Clinic, Copley Memorial Hospital, and Drs. David Lando and Ann L. West. These defendants were also sued by Mrs. Testin's husband, Richard, for loss of consortium.

According to the pleadings and stipulations by the parties, Mrs. Testin underwent gynecological surgery at Copley Memorial in 1989. The surgery was performed by Dr. Scott Donovan, an employee of Dreyer Medical Clinic. During the course of her recovery at Copley, Mrs. Testin received care from Dr. Ann West and various other employees of the Dreyer Clinic, including Dr. Judson Jones. On the fifth day following the operation, Dr. Jones ordered diagnostic X rays of Mrs. Testin's abdomen after she complained of severe abdominal pain. The X rays were interpreted by Dr. Lando. Mrs. Testin claims that Lando and the other named defendants were negligent because they failed to properly diagnose and treat a post-operative complication, causing her to suffer a ruptured bowel.

During the course of pretrial discovery, one of Dreyer's lawyers, William Cunningham, asked the Testins' counsel for permission to meet privately with Dr. Paul Q. Herwick. Herwick was an employee of Dreyer, owned shares in the clinic, and served on its board of directors. He was of interest to Cunningham because he had been consulted about Mrs. Testin's case after the X rays were taken, and he performed the surgical procedure which ultimately revealed the existence of her bowel rupture. Although none of the Testins' allegations of negligence were based on acts or omissions committed by Herwick, Cunningham believed that he needed to meet privately with the doctor in order to prepare his defense of Dreyer properly.

The Testins' lawyer refused to permit such a meeting, so Dreyer asked the circuit court to enter an order granting its attorneys leave to meet with Herwick

"without the presence of the Plaintiff or Plaintiff's counsel and without sanctions." The circuit court denied the motion and instead entered an order prohibiting defense counsel from engaging in *ex parte* communications with Herwick regarding Mrs. Testin's medical care and treatment. Dreyer's motion for reconsideration was denied. In addition, the circuit court held Dreyer's lawyer Cunningham in contempt of court and fined him $100 after Cunningham announced that he intended to speak to Herwick in violation of the court's order.

Cunningham did not appeal the adjudication of contempt against him. Although an appeal was filed by Dreyer, Dreyer did not argue the issue of contempt in its brief, and the appellate court declared the issue waived (238 Ill. App. 3d at 893). The sole question was the propriety of the circuit court's pretrial discovery order prohibiting the *ex parte* contacts with Mrs. Testin's treating physician. After concluding that it had jurisdiction to address this issue, the appellate court affirmed, holding that the *ex parte* contacts were properly barred under *Petrillo v. Syntex Laboratories, Inc.* (1986), 148 Ill. App. 3d 581. Dreyer then appealed to this court, arguing that the *Petrillo* doctrine should not have been applied under the circumstances present here or, in the alternative, that the doctrine should be abolished.

Although the order challenged in this case prohibited, rather than allowed, *ex parte* contacts with the plaintiff's treating physician, there is no question that it must still be characterized as a pretrial discovery order. For the reasons discussed in connection with cause No. 74831, the appellate court has no jurisdiction to consider interlocutory appeals from such orders. They are subject to review only on appeal from the final judgment in a case.

The appellate court here did not dispute these principles, but reasoned that it nevertheless had

authority to consider an immediate appeal from the circuit court's order by virtue of the $100 fine imposed on Dreyer's attorney for his contumacious conduct. We agree that the imposition of a sanction for contempt is final and appealable. As this court explained in *Silverstein*, 87 Ill. 2d at 172,

> "although occurring within the context of another proceeding and thus having the appearance of being interlocutory, it is an original special proceeding, collateral to and independent of, the case in which the contempt arises. [Citations.] It is the end of the proceeding begun against the witness. There is nothing left to be done but enforce the judgment."

We further agree that where an individual appeals contempt sanctions imposed on him for violating or threatening to violate a pretrial discovery order, that discovery order is subject to review. See *Silverstein*, 87 Ill. 2d at 171-72.

The problem with applying these rules here is that Dreyer's attorney has not appealed the sanctions for contempt. The appeal is advanced only by Dreyer. Given that Dreyer, itself, was not held in contempt or fined, we fail to see what standing it has to raise the contempt issue. Standing requires injury in fact to a legally cognizable interest (*In re Marriage of Rodriguez* (1989), 131 Ill. 2d 273, 280), but the fact that the lawyer must pay a $100 fine has no discernible adverse effect on Dreyer. Its posture in the case is completely unchanged.

The injury to Dreyer comes not from the sanction for contempt, but from the underlying order prohibiting the *ex parte* interviews. As we have previously discussed, that order, standing alone, is not independently reviewable on interlocutory appeal. The only legitimate jurisdictional basis for the appeal is the imposition of sanctions for contempt. Dreyer has made no effort to explain why its lawyer did not appeal from that contempt sanction, nor has it endeavored to formulate a

theory as to why it might have the right to proceed in the lawyer's stead. Rather, it has ignored the issue of contempt completely. Accordingly, as the appellate court expressly found, the issue of contempt has been waived. This is fatal to the appeal, for absent the question of contempt, the jurisdiction of the reviewing court is lost.

For the foregoing reasons, the judgments of the appellate court in both cause No. 74831 and cause No. 74897 are vacated, and these appeals are dismissed.

*Appellate court judgments vacated;*
*appeals dismissed.*

JUSTICE NICKELS took no part in the consideration or decision of this case.

JUSTICE McMORROW, dissenting:

These two appeals involve medical malpractice cases that have been consolidated in this court. Both appeals challenge the propriety of trial court rulings with respect to defense motions to engage in pretrial *ex parte* interviews of the plaintiffs' treating physicians. The parties undertook interlocutory appeals from the trial court rulings. The majority dismisses the appeals for lack of appellate jurisdiction. I respectfully dissent from the majority's disposition of these appeals on jurisdictional grounds.

ANALYSIS

I disagree with the majority's decision to dismiss the instant appeals for lack of jurisdiction, without first providing the parties an opportunity to argue this significant and dispositive issue to the court. The arguments of the parties to this appeal are dedicated wholly and exclusively to the substantive issues involving the *Petrillo* doctrine (see *Petrillo v. Syntex Laboratories, Inc.* (1986), 148 Ill. App. 3d 581) that have been raised in this

appeal. The parties did not argue the question of appellate jurisdiction before this court. This court could have, and should have, entered an order directing the parties to brief the issue of appellate jurisdiction. The majority's failure to do so is inequitable to the litigants in the present case.

I also cannot concur in the majority's *sua sponte* declaration regarding the constitutionality of section 10(b) of the Mental Health and Developmental Disabilities Confidentiality Act (740 ILCS 110/10(b) (West 1992)). The majority concludes that, to the extent section 10(b) permits appeals from less than final judgments in civil cases, section 10(b) is unconstitutional as an improper infringement on this court's power to determine the scope of interlocutory appeals from nonfinal judgments of the trial court. This argument was not raised by the parties to this appeal, and the majority needlessly offers *dicta* on the constitutionality issue. It is well established that "this court has long held that constitutional questions will not be considered if the cause can be determined on other grounds." (*People ex rel. Waller v. 1990 Ford Bronco* (1994), 158 Ill. 2d 460, 464, citing *Exchange National Bank v. Lawndale National Bank* (1968), 41 Ill. 2d 316, 321.) Because the majority concludes that appellate jurisdiction is lacking under Rule 307, review of the constitutionality of the statute in this case is not required in order to dispose of the instant appeals.

In addition, although I agree with the majority's recognition that an appeal from an order of contempt permits review of the underlying discovery order, I disagree with the majority's reasoning that Dreyer's appeal in this case is not in reality the appeal of its counsel, Cunningham, whom the trial court held in contempt of court. Although this court has observed that it is the attorney-contemnor who should appeal from a contempt

order (see, *e.g.*, *People v. Shukovsky* (1988), 128 Ill. 2d 210, 219-20), we have further acknowledged that the failure to formally name the attorney-contemnor in the notice of appeal does not deprive this court of jurisdiction to entertain the appeal. (*Waste Management, Inc. v. International Surplus Lines Insurance Co.* (1991), 144 Ill. 2d 178, 188-89.) Our remarks in *Waste Management* are equally applicable to the present cause and bear repeating: "It is our preference that cases presented for our review be resolved on the merits, and to that end, notice requirements are given a liberal construction [citation]. Mere technical defects in form, as opposed to substance, are deemed not fatal. [Citation.]" (*Waste Management*, 144 Ill. 2d at 188-89.) The majority fails to recognize this precedent. Nevertheless, *Waste Management* dictates the inescapable conclusion that the majority is particularly remiss to refuse to address the arguments of Dreyer and Cunningham. This error is compounded by the majority's refusal to grant Dreyer's motion to amend its notice of appeal in order to formally name its attorney, Cunningham, as an appealing party. Were the majority to allow this motion to amend, in order to remedy this purely technical defect, the majority would have no sound basis on which to justify its refusal to address the *Petrillo* issues raised in the present appeals.

The majority's disposition is particularly disturbing in the instant cause because of its impact on the interests of the litigants. By severely limiting the opportunities for interlocutory appellate review of a trial court's *Petrillo* ruling, the majority disregards the potentially irreparable harm that may occur to a party whose treating physician has engaged in *ex parte* communications with opposing counsel. The majority wholly ignores that the danger of *ex parte* communication may include the prospect that the treating physi-

cian will disclose material that should not have been divulged under any circumstances. The plaintiffs in the instant appeals argue that a trial court's erroneous allowance of defense requests to engage in *ex parte* communications with the plaintiffs' treating physicians threatens the plaintiffs' significant and fundamental physician-patient privileges. Plaintiffs contend that the harm from a wrongful infringement on the plaintiff's privileges as a patient cannot be effectively remedied after trial and final judgment. As one commentator has observed, "Confidentiality, once breached, cannot be restored." (Corboy, *Ex Parte Contacts Between Plaintiff's Physician and Defense Attorneys: Protecting the Patient-Litigant's Right to A Fair Trial*, 21 Loy. U. Chi. L.J. 1001, 1011 (1990).) The interests of the defendants, who seek *ex parte* communication in the present cases, are equally significant. An erroneous ruling from the trial court, which improperly bars *ex parte* communication, could substantially interfere with the defendant's ability to develop and present its case at trial.

These concerns deserve a reviewing court's immediate attention, notwithstanding the majority's perception of a lack of appellate jurisdiction. I note that in other jurisdictions, courts have created and recognized an exception to the general rule of nonreviewability of interlocutory orders of the trial court. Under this exception, the reviewing court may consider an interlocutory appeal from a nonfinal order of the trial court, where the trial court's ruling may result in an erroneous invasion of an important right or privilege, and where the damage from such an erroneous invasion cannot be effectively remedied if the court awaits final judgment to undertake review. See, *e.g., Gulfstream Aerospace Corp. v. Mayacamas Corp.* (1988), 485 U.S. 271, 276, 99 L. Ed. 2d 296, 305, 108 S. Ct. 1133, 1136-37, quoting *Coopers & Lybrand v. Livesay* (1978), 437 U.S. 463, 468,

57 L. Ed. 2d 351, 357-58, 98 S. Ct. 2454, 2458 (nonfinal order may be subject to immediate interlocutory review, where the order " 'conclusively determine[s] the disputed question,' " " 'resolve[s] an important issue completely separate from the merits of the action,' " and is " 'effectively unreviewable on appeal from a final judgment' "); *Smith v. BIC Corp.* (3d Cir. 1989), 869 F.2d 194 (allowing interlocutory appeal from protective order that barred disclosure of alleged trade secret); *Hollis v. Finger* (1990), 69 Ohio App. 3d 286, 590 N.E.2d 784 (allowing interlocutory appeal from order compelling deposition of treating physician); *Hutchison v. Luddy* (1992), 414 Pa. Super. 138, 606 A.2d 905 (allowing interlocutory appeal from order regarding production of church documents); see generally Annot., *Appealability of discovery order as "final decision" under 28 USCS § 1291*, 36 A.L.R. Fed. 763 (1978); Annot., *Appealability of order pertaining to pretrial examination, discovery, interrogatories, production of books and papers, or the like*, 37 A.L.R.2d 586 (1954).

Although our appellate court has acknowledged that other jurisdictions have adopted this rule allowing for interlocutory appeals from certain significant, nonfinal rulings of the trial court, and although the appellate court has advocated adoption of the rule in this State, our appellate court has believed itself barred from applying the rule because of its perceived inconsistency with precedent of this court. (See, *e.g.*, *Matsunaga v. Worrell* (1988), 169 Ill. App. 3d 681, 682; *National Wrecking Co. v. Midwest Terminal Corp.* (1987), 164 Ill. App. 3d 621, 623-25; *Chicago Title & Trust Co. v. Guaranty Bank & Trust Co.* (1978), 59 Ill. App. 3d 362, 363-65.) When the majority filed its opinion in this cause, it did not provide the parties an opportunity to brief and argue the question of appellate jurisdiction in the instant appeals. As a result, the majority failed to

consider the adoption of an exception which would allow interlocutory appeals from significant nonfinal discovery rulings and failed to provide the occasion to consider the applicability of the cited precedent from other jurisdictions to the cases presently before this court. The parties' petitions for rehearing raise these issues, but the majority has denied the petitions and refuses to address their arguments. I believe this is in error, and that the petitions for rehearing should be allowed. The arguments are significant and deserve scrutiny by this court in the present appeals. In my opinion, the majority is in error to reach its conclusion regarding appellate jurisdiction without considering the wisdom of this foreign precedent to the instant cause.

Although the majority finds no appellate jurisdiction in the present cases, one potential avenue for appellate review under Illinois law may remain for other cases where the parties seek interlocutory review of a trial court's *Petrillo* ruling. Principles of law and equity might permit a trial court to enter an order finding that, pursuant to Rule 308, the court's *Petrillo* ruling "involves a question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." (134 Ill. 2d R. 308(a).) Unfortunately, at the time that the majority's opinion was originally filed, the litigants were provided no opportunity to seek such permissive interlocutory appeal in the instant cases. After the filing of the majority opinion, the appellants filed petitions for rehearing. In conjunction with these petitions, the parties filed a motion seeking interlocutory appeal under Supreme Court Rule 308. This motion is based on the trial court's entry of an order certifying the parties' *Petrillo* arguments for interlocutory, Rule 308 review. However, the majority has denied the motion and re-

fuses to grant interlocutory appeal under Rule 308. In my view, such refusal is unwise and unsound, because it performs a gross disservice to the litigants and the trial court. The parties' *Petrillo* arguments have been fully briefed and litigated, and there is no defensible reason for the majority's bald refusal to address them.

As a result of the majority's rulings, parties to a lawsuit appear to be barred from obtaining any interlocutory appellate review of all trial court *Petrillo* rulings, without regard to the extent to which an erroneous ruling of the trial court may cause irreparable damage to the interest of the litigants and violate fundamental privilege principles. In view of the majority's refusal to grant the parties' Rule 308 request for interlocutory review, it is entirely unclear whether Rule 308 remains a viable avenue for interlocutory appellate review of a trial court's *Petrillo* order. In my opinion, the majority's disposition is unsettling and inequitable. The interests of the plaintiffs and the defendants, with respect to a trial court's *Petrillo* ruling, are too significant to the parties, and to the progress of the litigation, to delay appellate review until final judgment. The trial bar needs and deserves guidance on the important and recurring issues presented in these appeals. In my view, such issues merit interlocutory, appellate scrutiny.

For these reasons, I respectfully dissent.