2021 IL App (1st) 200148-U

No. 1-20-0148

Fourth Division
June 30, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

---

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

---

|  |  |  |
|---|---|---|
| ELLEN CATLEDGE, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DAMARO STERLING; WALGREEN COMPANY, an | ) | |
| Illinois Corporation, d/b/a Walgreens; WALGREENS | ) | |
| BOOTS ALLIANCE, INC., a Foreign Corporation; | ) | Appeal from the Circuit Court |
| WALGREEN NATIONAL CORPORATION, an Illinois | ) | of Cook County. |
| Corporation; S.E.B. SERVICES OF ILLINOIS, INC., an | ) | |
| Illinois Corporation; S.E.B. SERVICES OF NEW | ) | No. 17 L 007289 |
| YORK, INC., a Foreign Corporation; SAFE | ) | |
| ENVIRONMENT BUSINESS SOLUTIONS, INC., a | ) | The Honorable |
| Foreign Corporation; SECURITY ENFORCEMENT & | ) | Christopher E. Lawler, |
| INVESTIGATIONS, INC., an Illinois Corporation; | ) | Judge Presiding. |
| SECURITY RESOURCES, INC., d/b/a Security | ) | |
| Enforcement & Investigations, Inc., a Foreign | ) | |
| Corporation, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| (Damaro Sterling, | ) | |
| Defendant-Appellant). | ) | |
| | ) | |

---

PRESIDING JUSTICE GORDON delivered the judgment of the court.
Justices Reyes and Martin concurred in the judgment.

**ORDER**

¶ 1     *Held:*   The order from which the appellant appeals is not an interlocutory order granting an injunction, as he claims, but is a nonappealable discovery order. Consequently, we lack jurisdiction to consider the appellant's claims and his appeal is dismissed for lack of jurisdiction.

¶ 2     On January 21, 2017, plaintiff Ellen Catledge approached a counter in a Walgreens store in Chicago and claimed that a case of water sitting on the counter had previously been purchased by her. Plaintiff was unable to provide a receipt demonstrating she had purchased the water, and defendant Damaro Sterling, who was providing security services at the store, physically detained plaintiff, injuring her. Plaintiff filed suit against a number of defendants, including Sterling, seeking compensation for her injuries. In the course of discovery, plaintiff sought certain information concerning Sterling's personal and criminal background. Sterling filed a motion for a protective order, claiming that the sought-after material was irrelevant and prejudicial. The trial court denied Sterling's motion for a protective order and Sterling filed the instant interlocutory appeal. For the reasons set forth below, we dismiss the appeal for lack of jurisdiction.

¶ 3                          BACKGROUND

¶ 4     On July 19, 2017, plaintiff filed her original complaint in the case at bar; the complaint was amended four times, and the operative complaint at the time that the discovery dispute at issue on appeal arose was plaintiff's third amended complaint, which was filed on August 28, 2018.[1] Accordingly, we take our facts from the third amended complaint.

---

[1] Plaintiff subsequently filed a fourth amended complaint, but that complaint was filed on the same day the trial court entered the order at issue on this appeal. Plaintiff also filed a motion for leave to file additional counts seeking punitive damages against the corporate defendants, but that motion had not been ruled on as of the time of the instant appeal.

¶ 5        Plaintiff alleged that, on January 21, 2017, she was a customer of a Walgreens store located on Jeffrey Boulevard in Chicago, and Sterling was performing security services for the store. Plaintiff further alleged that Sterling and plaintiff had an interaction, which culminated in Sterling using physical force to detain plaintiff, injuring her in the process.

¶ 6        Plaintiff's complaint contained nine counts for negligence, one directed at each of nine separate defendants. These defendants can be grouped into four categories. First, the Walgreens defendants, consisting of Walgreen Company, Walgreens Boots Alliance, Inc., and Walgreen National Corporation, were alleged to have "owned, operated, controlled, managed, and maintained" the store at issue. Second, the S.E.B. defendants, consisting of S.E.B. Services of Illinois, Inc., S.E.B. Services of New York, Inc., and Safe Environment Business Solutions, Inc., were alleged to be in the business of providing security services. Similarly, Security Enforcement & Investigations, Inc. (Security Enforcement),[2] was also alleged to be in the business of providing security services. Plaintiff's complaint alleges that the Walgreens defendants entered into an agreement with one of the S.E.B. defendants to provide security services at the store at issue, and that, in turn, the S.E.B. defendant entered into an agreement with Security Enforcement to provide security services at the store. Finally, defendant Sterling was alleged to have been employed by Security Enforcement to provide security services at the store. Plaintiff's allegations against Sterling were based on his conduct during the interaction, while her allegations against the other defendants were based on vicarious liability, as well as improper training and supervision.

_____

[2] Plaintiff initially alleged that defendant Security Resources, Inc., was doing business as Security Enforcement & Investigations, Inc. However, both companies denied that they were related, and plaintiff voluntarily dismissed her claims against Security Resources, Inc., on February 14, 2019.

¶ 7        The Walgreens defendants and the S.E.B. defendants each[3] filed an answer and affirmative defenses to plaintiff's third amended complaint, alleging that, on January 21, 2017, Sterling was serving as a security guard at the Walgreens store at issue when he observed plaintiff "refusing to pay for certain merchandise, attempting to leave the Store without paying for said merchandise, yelling and acting aggressively toward the Store's cashier, and frightening the Store's employees and customers/invitees." They further alleged that, when Sterling attempted to escort plaintiff out of the store, plaintiff "attacked" him, including repeatedly pushing him and slapping and punching at his body and face; Sterling made physical contact with plaintiff "in order to defend and protect himself against Plaintiff's attack." Security Enforcement also filed an answer and affirmative defenses, containing similar allegations, and Sterling later filed an answer and affirmative defenses, also alleging self-defense. In response, plaintiff denied the allegations as to her conduct.

¶ 8        Both the Walgreens defendants and the S.E.B. defendants also filed counterclaims against Security Enforcement, alleging that any injuries suffered by plaintiff were the result of Security Enforcement's negligence in hiring, training, and supervising Sterling. They also filed counterclaims against Sterling, alleging that his negligent conduct caused plaintiff's injuries.

¶ 9        The parties then engaged in discovery. As relevant to the instant appeal, on November 1, 2019, Sterling filed a motion for a protective order and to quash certain third-party subpoenas. Sterling claimed that plaintiff had conducted extensive discovery as to his personal and criminal background, far exceeding any reasonable inquiry into those topics. Sterling requested that the court require that any additional discovery related to him be done only after a court

---

[3] The Walgreens defendants collectively filed one answer and affirmative defenses, while the S.E.B. defendants also collectively filed one answer and affirmative defenses.

order permitting such discovery. Sterling also claimed that there remained two outstanding subpoenas—one to Olive Harvey College, where he obtained a degree in 2003, and one to the Chicago Board of Education, where he worked in the 1990s—and that neither of these subpoenas were tailored to seek relevant information. Sterling thus requested that the subpoenas be quashed.

¶ 10    Additionally, Sterling requested that the court strike 12 witnesses from plaintiff's disclosures. First, Sterling objected to 10 police-officer witnesses, who would testify as to various aspects of Sterling's criminal history. Two of the officers would testify regarding a 2018 misdemeanor for which Sterling was acquitted; four would testify regarding a 2010 misdemeanor that was dismissed by the trial court; two would testify regarding a 2009 misdemeanor that was dismissed by the trial court; and two would testify regarding a 2002 misdemeanor that was dismissed by the trial court. Sterling also objected to a witness who was the author of a *Chicago Reader* article about a criminal matter from 2004 for which Sterling was acquitted, who would testify about Sterling's 2004 trial, as well as his opinion that Sterling had not graduated from the educational institutions he claimed to have attended. Finally, Sterling objected to a witness who was a former romantic partner of his, who would testify that Sterling was mentally unstable based upon her interactions with him.

¶ 11    In response, plaintiff claimed that the discovery she sought was relevant or could lead to relevant information, and supported her theories of recovery. Plaintiff claimed that defendants' contracts and rules barred anyone with a felony conviction or a history of mental or emotional impairment from being a security guard. Plaintiff argued that, had an appropriate background check been performed, Sterling should never have been hired based on his past behavior, and that her experts would testify that defendants were negligent in hiring him as a security guard.

Plaintiff claimed that "[t]his evidence is intended to show that defendants herein did not follow their contracts and rules, that Sterling should not have been hired as a security guard, and that he exhibits a pattern of behavior of abusing his power, impersonating a police officer, and using excessive force and violence, especially towards women (all of which he did here)."

¶ 12    On January 3, 2020, the trial court entered an order denying Sterling's motion for a protective order, finding that, "[a]t this stage of the proceedings, Sterling's past behavior may be relevant." However, the court also cautioned, "[t]hat said, the Court makes no comment or determination on whether the materials Sterling seeks to protect will be admissible at trial." Sterling timely filed a notice of interlocutory appeal, and this appeal follows.

¶ 13                                    ANALYSIS

¶ 14    On appeal, Sterling claims that the trial court erred in denying his motion for a protective order. As an initial matter, plaintiffs claim that we lack jurisdiction to consider Sterling's claims on appeal. The question of whether we have jurisdiction over the instant appeal presents a question of law, which we review *de novo*. *In re Marriage of Demaret*, 2012 IL App (1st) 111916, ¶ 25; *In re Marriage of Gutman*, 232 Ill. 2d 145, 150 (2008). *De novo* consideration means we perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).

¶ 15    Generally, we have jurisdiction to consider only final judgments. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994). There are exceptions to this rule; however, our supreme court has made clear that "[t]he law is well established that unless specifically authorized by the rules of this court, the appellate court has no jurisdiction to review judgments, orders or decrees which are not final." *Department of Central Management Services v. American Federation of State, County & Municipal Employees*, 182 Ill. 2d 234, 238 (1998). In the case at bar, Sterling claims that we

have jurisdiction under Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017), which allows for interlocutory appeals from trial court orders "granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction." "To determine what constitutes an appealable injunctive order under Rule 307(a)(1) we look to the substance of the action, not its form. *** Actions of the circuit court having the force and effect of injunctions are still appealable even if called something else." *In re A Minor*, 127 Ill. 2d 247, 260 (1989).

¶ 16    An injunction is "a 'judicial process operating in personam, and requiring [a] person to whom it is directed to do or refrain from doing a particular thing.' " *In re A Minor*, 127 Ill. 2d at 261 (quoting Black's Law Dictionary 705 (5th ed. 1979)). Our supreme court, however, has cautioned that "[n]ot every nonfinal order of a court is appealable, even if it compels a party to do or not do a particular thing." *In re A Minor*, 127 Ill. 2d at 261-62. "Orders of the circuit court which can be properly characterized as 'ministerial,' or 'administrative'—because they regulate only the procedural details of litigation before the court—cannot be the subject of an interlocutory appeal." *In re A Minor*, 127 Ill. 2d at 262. Our supreme court has explained that such orders "do not affect the relationship of the parties in their everyday activity apart from the litigation, and are therefore distinguishable from traditional forms of injunctive relief." *In re A Minor*, 127 Ill. 2d at 262. Accordingly, pretrial discovery orders are not made appealable by Rule 307, even though they share some qualities of an injunction in that they compel parties to do or not to a do a particular thing. *Almgren v. Rush-Presbyterian-St. Luke's Medical Center*, 162 Ill. 2d 205, 211 (1994). See also *People ex rel. Scott v. Silverstein*, 87 Ill. 2d 167, 171 (1981) ("Supreme Court Rules 306, 307, and 308 [citations] provide for appeals from certain specified interlocutory orders of the court. Discovery orders are not made appealable under the provisions of these rules.").

¶ 17    As Sterling notes, there are some situations in which discovery orders are appealable. For instance, a protective order circumscribing the publication of information is an appealable injunctive order. *Skolnick v. Altheimer & Gray*, 191 Ill. 2d 214, 221-22 (2000). Similarly, if an order both grants a protective order and stays the proceedings, the order is appealable under Rule 307(a)(1), because it is more than merely a protective order regulating discovery. *Khan v. BDO Seidman, LLP*, 2012 IL App (4th) 120359, ¶¶ 54-55. In the case at bar, however, we cannot find that the trial court's denial of Sterling's motion is anything other than a nonappealable discovery order.

¶ 18    Sterling claims that the trial court's order is more than merely a discovery order, because his motion "requested the protection of his rights from further attack and the prohibition on the unnecessary (and ultimately pointless) expansion of the litigation beyond the actual issues in this case." However, that is the case in any discovery dispute—one party seeks more information than the other party wishes to provide. Nothing about the situation present in the case at bar transforms Sterling's motion into one seeking injunctive relief. Sterling was well within his rights to ask the trial court to limit discovery and quash plaintiff's witnesses. However, the court's denial of his request is simply not an order denying him injunctive relief, and we therefore cannot find that we have jurisdiction to consider the propriety of the court's order.

¶ 19    We find instructive our supreme court's analysis in *Almgren* and in *Silverstein*, both cases in which the trial court permitted a party to conduct certain discovery that someone else wished to prevent. In *Almgren*, defense counsel in a medical malpractice case sought authorization to conduct an *ex parte* interview with the plaintiff's therapist, which was granted. *Almgren*, 162 Ill. 2d at 208. The plaintiff immediately appealed, and the appellate court found that it had

jurisdiction under Rule 307(a)(1), because the order had the effect of enjoining the plaintiff from asserting her patient-therapist privilege. *Almgren*, 162 Ill. 2d at 211. However, the supreme court reversed, finding no jurisdiction. The supreme court explained that there were two errors in the appellate court's reasoning. First, the plaintiff had waived any privilege by filing suit based on the therapist's alleged negligence. *Almgren*, 162 Ill. 2d at 211-12. Additionally, the supreme court found that a claim of privilege did not change the fact that the order was a nonappealable discovery order. *Almgren*, 162 Ill. 2d at 212.

¶ 20    In its analysis, the *Almgren* court discussed its prior analysis in *Silverstein*, which also involved a motion to quash. In *Silverstein*, one of the defendants issued a subpoena to a non-party newspaper reporter, seeking his deposition and the production of certain documents. *Silverstein*, 87 Ill. 2d at 169. The reporter filed a motion to quash, which was denied. *Silverstein*, 87 Ill. 2d at 170. On appeal, the appellate court found that the order was final and appealable, but the supreme court reversed, finding that there was no jurisdiction. First, the supreme court found that "[d]iscovery orders are not made appealable under the provisions of" the rules providing for interlocutory appeals. *Silverstein*, 87 Ill. 2d at 171. The supreme court further found that the order was not a final order, but was merely "an interlocutory one, made as a preliminary order in a pending suit." *Silverstein*, 87 Ill. 2d at 173. Thus, it found that the order was not appealable. *Silverstein*, 87 Ill. 2d at 173.

¶ 21    Similarly, in the case at bar, despite Sterling's arguments to the contrary, the trial court's order denying Sterling's request for a protective order was a nonappealable discovery order, and was not an order denying Sterling injunctive relief, as he claims. Consequently, we must dismiss the instant appeal for lack of jurisdiction.

¶ 22                                          CONCLUSION

¶ 23        For the reasons set forth above, we dismiss the instant appeal for lack of jurisdiction, as the

order from which Sterling appeals is a nonappealable discovery order.

¶ 24        Dismissed for lack of jurisdiction.