No. 2-24-0089
Order filed May 10, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Kane County. |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 24-CF-131 |
| | ) | |
| ANTHONY R. ROSADO, | ) | Honorable |
| | ) | David Paul Kliment, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE JORGENSEN delivered the judgment of the court.
Presiding Justice McLaren and Justice Mullen concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court did not err in granting defendant pretrial release with conditions upon considering his continued detention.  Affirmed.

¶ 2    The State appeals the trial court's February 2, 2024, order granting defendant's, Anthony R. Rosado's, motion to reconsider his continued pretrial detention and granting defendant pretrial release with conditions, pursuant to Public Act 101-652 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act),[1] as codified in article 110 of the Code of Criminal Procedure of

_____

[1]The Act has also been referred to as the Safety, Accountability, Fairness and Equity-Today

1963 (Code) (725 ILCS 5/art. 110 (West 2022)). See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of the Code); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023). On appeal, the State argues that the trial court abused its discretion by granting defendant pretrial release with conditions, where (1) it established that no condition or combination of conditions could mitigate the threat defendant posed to others; and (2) the trial court lacked jurisdiction to modify a prior detention order when a notice of appeal was filed after the prior detention order. For the following reasons, we affirm.[2]

¶ 3                                    I. BACKGROUND

¶ 4                    A. Proceedings Leading to First Appeal (No. 2-24-0063)

¶ 5        On January 22, 2024, defendant was charged with aggravated domestic battery (720 ILCS 5/12-3.3(a) (West 2022)), aggravated domestic battery - strangle (*id.* § 12-3.3(a-5)), domestic

---

(SAFE-T) Act. Neither name is official, as neither appears in the Illinois Compiled Statutes or public acts.

[2] We retroactively apply the newly amended Illinois Supreme Court Rule 604(h)(8) (eff. April 15, 2024), which allows a disposition to be filed 100 days from the date the appellant filed the notice of appeal. The amendment to the rule is procedural, in that it allots the time for appellate disposition. "It is well settled that statutory amendments may be applied retroactively where they are purely procedural and do not impair a vested right" (*People v. Easton*, 2017 IL App (2d) 141180, ¶ 14 (citing *Allegis Realty Investors v. Novak*, 223 Ill. 2d 318, 331 (2006))), and the retroactive application of purely procedural amendments extends to amendments to supreme court rules (*id.* (citing *People ex rel. Madigan v. Petco Petroleum Corp.*, 363 Ill. App. 3d 613, 620-21 (2006))).

battery (*id.* § 12-3.2(a)(2)), domestic battery - bodily harm (*id.* § 12-3.2(a)(1)), and driving on a revoked license (725 ILCS 5/6-303(a) (West 2022)).

¶ 6    A police synopsis related that, on January 21, 2024, Angalina R. Pope, defendant's girlfriend and the mother of his children, reported that defendant pushed her down the stairs in his apartment in Elgin. He also struck Pope several times in the head and face areas. Pope bit defendant's finger, and he briefly stopped striking her before continuing. Pope further stated that defendant struck her on her arms and "all over" and strangled her (upon which she became lightheaded). The officer noted that she observed scratches on Pope's face and neck and bruising around her eyes. She also observed a bruise and laceration with fresh blood on Pope's nose. Pope was transported to the hospital for dizziness, and hospital staff advised that she had a broken nose. The police synopsis further related that defendant denied striking Pope and stated that she "rushed at him" and bit his finger. The police officer observed a cut on defendant's right pointer finger. Defendant operated a vehicle while his license was revoked, traveling from Hoffman Estates (where Pope lives) to Elgin, and was stopped by police in East Dundee concerning this incident.

¶ 7    On January 22, 2024, the State filed a verified petition to deny defendant pretrial release pursuant to section 110-6.1 of the Code (*id.* § 110-6.1), alleging that defendant was charged with detainable offenses, that he posed a real and present threat to the safety of any person or persons or the community, and that no condition or combination of conditions could mitigate the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case.

¶ 8    That same day, the trial court (Judge Salvatore LoPiccolo, Jr.) held a hearing on the State's petition. At the hearing, the State proffered the police synopsis. It also noted defendant's criminal history, which included two juvenile cases in 2017 for which he was adjudicated delinquent;

possession of stolen motor vehicle (he was initially placed on probation; it was later revoked; he served three years in the Department of Corrections (DOC)); and defendant was currently on parole for that conviction. Further, while on probation, he was convicted of possession of methamphetamine, for which he served four years in the DOC and was currently on parole. The State argued that no condition, including electronic home monitoring (EHM) or a no-contact order, would mitigate the threat he posed to Pope or any other person. Defense counsel noted that defendant does not live with the victim, could attend court dates by obtaining transportation from ride-hailing services, he has a smartphone and, thus, could access court hearings via Zoom, has significant ties to the community (having lived there all his life), and has a job. Counsel also noted that defendant was the sole supporter of his two children (a four-month-old and a four-year-old). Defendant was near the end of his parole, and he had taken steps to undergo ordered psychological and substance-use evaluations. Counsel also noted that the public safety assessment report scored defendant in the lower half of the new-criminal-activity scale, as well as the failure-to-appear scale (and counsel noted defendant had no failures to appear in the last two years). Counsel argued that defendant's criminal history was non-violent, he does not reside with the victim, had complied with his weekly check-ins with his parole officer, and was concerned for his children's safety.

¶ 9     As to Pope, defense counsel proffered that she has substance use issues, was hospitalized one week earlier after overdosing on prescription medication (and had overdosed three times within the last month), and defendant showed text messages to police of Pope asking defendant to get the children because she could not "handle them." Counsel argued that a no-contact order would suffice to mitigate any threat defendant posed to Pope and that a third party could facilitate visitation with the children.

¶ 10    The trial court found that the proof was evident and the presumption great that defendant committed detainable offenses, that he posed a real and present threat to the physical safety of Pope, and that no condition or combination thereof would mitigate the threat to Pope's safety. As to dangerousness, the court noted that defendant allegedly broke Pope's nose, strangled her, and threw her down the stairs while he was on mandatory supervised release/on parole for two offenses. In finding that no condition or combination thereof would mitigate the threat to Pope's safety, the court noted that defendant was on mandatory supervised release/parole at the time of the commission of the offenses, which showed an inability to follow conditions. It noted that GPS or EHM could not prevent defendant from attacking Pope again. On January 22, 2024, defendant appealed the court's detention order (case No. 2-24-0063).

¶ 11              B. Proceedings Leading to Second Appeal (No. 2-24-0089)

¶ 12    On January 30, 2024, private counsel entered an appearance for defendant. On February 2, 2024, defense counsel made an oral motion to reconsider defendant's detention. Counsel argued that defendant had no convictions for battery or aggravated battery, nor had he ever been previously charged with a violent crime. Counsel also noted that defendant had lived in Elgin all his life, owns an apartment, his family lives in Elgin, he works in Elgin as a road painter, and attends church in Elgin. Counsel argued that, given his ties to the community, defendant posed no flight risk. Counsel asserted that the lack of flight risk and absence of a violent background warranted modification of the pretrial detention conditions and requested that the court order GPS/home confinement.

¶ 13    The State objected, arguing that no new information had been provided and noted the seriousness of the charges. It also filed a written objection, arguing that the trial court could not change or modify the interlocutory order from which defendant had appealed, because it lacked

jurisdiction to change or alter the subject matter of the order. It requested that the court not further consider defendant's detention status until this court had ruled on defendant's pending appeal.

¶ 14 On the same day, the trial court (Judge David Paul Kliment) ordered defendant released with conditions. It noted that defendant's motion was not a motion to reconsider but a reassessment of continued detention. It noted that defendant's criminal history included three juvenile cases for unlawful possession of stolen motor vehicles; defendant was on probation; he had a 2020 felony as an adult and was sentenced to the DOC; and he was currently on parole. The court also noted that defendant's criminal history did not include crimes of violence. Also, the victim lives in Hoffman Estates and defendant lives in Elgin.

¶ 15 The trial court rejected the State's argument in its written motion that the court lacked jurisdiction to re-assess defendant's detention status, noting that defendant's custodial status should be reassessed at every court date, as the legislature mandated, and that a defendant should be able to appeal such rulings. It granted defendant's release, with the following conditions: no contact with Pope; EHM or GPS with an exclusion zone of Pope's address and defendant would be allowed movement for work; no firearm or FOID or concealed carry card; and no possession or consumption of alcohol or controlled substances (unless defendant had a prescription for controlled substances). The court noted that defendant be placed on pretrial release supervision level No. 1. He would receive a phone number and would be required to contact pretrial services upon his release and to follow instructions. The court also ordered defendant to enroll and complete a 26-week domestic violence counseling course.

¶ 16 The same day, the State filed a notice of appeal, seeking reversal of the court's order on the bases that the court lost jurisdiction to decide detention status when defendant filed his notice

of appeal from the court's first detention order and that the court erred in determining that conditions could mitigate any threat defendant posed to the victim.

¶ 17                         C. Dismissal of First Appeal

¶ 18    On March 7, 2024, defendant filed in this court an unopposed motion to dismiss his first appeal (No. 2-24-0063) as moot, arguing that he had been released on conditions as a result of a new hearing and the State had filed an appeal from that order (No. 2-24-0089). He also noted that he had been on mandatory supervised release, and, on February 5, 2024, he was returned to the custody of the DOC with a scheduled release date of May 16, 2024. Defendant argued that, because the trial court "vacated" the detention order from which his first appeal originated and because he was not being held pursuant to the Act, his first appeal was moot. On March 8, 2024, this court granted defendant's motion, and we dismissed his first appeal.

¶ 19                                II. ANALYSIS

¶ 20    The State argues that: (1) the trial court's granting of pretrial release with conditions was erroneous; and (2) that the trial court may not change or modify a detention order under Illinois Supreme Court Rule 604(h) (eff. Dec. 7, 2023) when a notice of appeal has been filed after a prior detention order. For the following reasons, we reject the State's arguments.

¶ 21                         A. Pretrial Release with Conditions

¶ 22    The Act amended the Code of Criminal Procedure of 1963 by abolishing traditional monetary bail in favor of pretrial release on personal recognizance or with conditions of release. 725 ILCS 5/110-1.5, 110-2(a) (West 2022). For qualifying offenses, upon filing a verified petition requesting denial of pretrial release, the State has the burden to prove by clear and convincing evidence (1) that the proof is evident or the presumption great that the defendant has committed a qualifying offense (*id.* § 110-6.1(e)(1)), (2) that the defendant's pretrial release poses a real and

present threat to the safety of any person or persons or the community (*id.* § 110-6.1(a)(1)-(7), (e)(2)) or a likelihood of willful flight to avoid prosecution (*id.* § 110-6.1(a)(8), (e)(3)), and (3) that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or the community or prevent the defendant's willful flight from prosecution (*id.* § 110-6.1(e)(3)).

¶ 23    In considering whether the defendant poses a real and present threat to the safety of any person or the community, *i.e.*, making a determination of "dangerousness," the trial court may consider evidence or testimony concerning factors that include, but are not limited to, (1) the nature and circumstances of any offense charged, including whether the offense is a crime of violence involving a weapon or a sex offense; (2) the history and characteristics of the defendant; (3) the identity of any person to whom the defendant is believed to pose a threat and the nature of the threat; (4) any statements made by or attributed to the defendant, together with the circumstances surrounding the statements; (5) the age and physical condition of the defendant; (6) the age and physical condition of the victim or complaining witness; (7) whether the defendant is known to possess or have access to a weapon; (8) whether at the time of the current offense or any other offense, the defendant was on probation, parole, or supervised release from custody; and (9) any other factors including those listed in section 110-5 of the Code of Criminal Procedure of 1963 (Code) (*id.* § 110-5). *Id.* § 110-6.1(g).

¶ 24    To set appropriate conditions of pretrial release, the trial court must determine, by clear and convincing evidence, what pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." *Id.* § 110-5(a).  In reaching its determination, the trial court must consider (1) the nature and circumstances

of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; (4) the nature and seriousness of the specific, real, and present threat to any person that would be posed by the person's release; and (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process. *Id.* The statute lists no singular factor as dispositive. See *id.* In addition, when a defendant is charged with aggravated domestic battery, the trial court can consider additional factors, such as: whether the alleged incident involved harassment or abuse as defined in the domestic violence statute; whether the defendant has a history of domestic violence or a history of other criminal acts; whether the defendant has been or is potentially a threat to any other person; the severity of the alleged incident; whether a separation from the victim of abuse or a termination of the relationship between them has recently occurred or is pending; whether the defendant has exhibited obsessive or controlling behaviors toward the victim; and any other factors the court deems have a reasonable bearing upon the defendant's propensity or reputation for violent, abusive, or assaultive behavior, or lack of that behavior. *Id.* § 110-5(a)(6).

¶ 25    Following the initial pretrial detention hearing, the statute also imposes a continuing obligation for the court to assess whether *continued* detention is necessary at subsequent appearances. Specifically, the statute provides that, at each subsequent appearance, the court must find "that continued detention is necessary to avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, or to prevent the defendant's willful flight from prosecution." *Id.* § 110-6.1(i-5); *People v. Long*, 2023 IL App (5th) 230881, ¶ 15; *People v. Stokes*, 2024 IL App (1st) 232022-U, ¶ 36. "Notably, this portion of the Code, unlike the portions dealing with petitions for detention, does not prescribe a quantum of evidence or place a burden of proof on any party." *People v. Mansoori*, 2024 IL App (1st) 232351,

¶ 18. The abuse-of-discretion standard applies to a review of the trial court's order of continued detention under section 110-6.1(i-5) of the Code. *People v. Long*, 2023 IL App (5th) 230881, ¶ 16.

¶ 26    Here, in ordering defendant's pretrial release with conditions, the trial court noted that defendant's criminal history included three juvenile cases for unlawful possession of stolen motor vehicles; that defendant was on probation; he had a 2020 felony as an adult and was sentenced to the DOC; and that he was currently on parole.  The court also noted that defendant's criminal history did not include crimes of violence and that the victim lives in Hoffman Estates and defendant lives in Elgin.  It ordered the following conditions: no contact with the victim; EHM or GPS with an exclusion zone of the victim's address (defendant would be allowed movement for work); no firearm or FOID or concealed carry card; and no possession or consumption of alcohol or controlled substances (unless defendant had a prescription for controlled substances).  The court also ordered that defendant be placed on pretrial release supervision level No. 1, upon which he would receive a phone number and would be required to contact pretrial services upon his release and follow instructions.  Finally, the court ordered defendant to enroll and complete a 26-week domestic violence counseling course.

¶ 27    The State argues that, although the trial court acknowledged defendant's criminal history and parole status, it made no other findings and gave no explanation for modifying the court's initial detention order (entered by Judge LoPiccolo).  Its determination was not justified by the evidence, the State asserts, and constituted an abuse of discretion.

¶ 28    Defendant responds that the incident with the victim was the first time he was charged with a violent offense, he has lived in Elgin his entire life and owns a home there, he is employed, has family in Elgin, and attends church there.  The victim lives in Hoffman Estates.  Defendant argues

that, other than the charged offenses, there was nothing in the record to suggest that conditions of release could not mitigate any threat he posed. The fact that he was charged with a violent offense, he contends, does not, standing alone, show that conditions of release will not mitigate against any threat he poses. *People v. Stock*, 2023 IL App (1st) 231753, ¶ 18 (noting that "more is required" than "bare allegations that [the] defendant has committed a violent offense" to establish that no conditions could mitigate threat the defendant posed). Defendant also contends that the conditions the court imposed were comprehensive and specifically addressed any threat he posed. He also notes that he does not live in the same city as the alleged victim, and the no-contact order is enforced by monitoring that prevents him from going to the victim's home.

¶ 29 We conclude that the trial court did not err in ordering defendant's pretrial release with conditions. Defendant's criminal history, as the trial court acknowledged, does not include any violent offenses. He has strong ties to Elgin, and the victim lives in Hoffman Estates. We agree with defendant that the comprehensive conditions the court imposed sufficiently addressed any threat that he posed. The court imposed a no-contact order, electronic monitoring, ordered that defendant not possess a firearm or consume alcohol or controlled substances, ordered that he enroll in a domestic-violence counseling course, and ordered that he comply with pretrial services instructions. Finally, the court acknowledged that defendant was on parole at the time of the charged offenses in this case. Although this fact weighs against a determination that defendant would abide by any court-imposed conditions, overall, we cannot conclude that the court's order was arbitrary or unreasonable.

¶ 30                                 B. Jurisdiction

¶ 31 Next, the State argues that, at the February 2, 2024, hearing, the trial court did not have jurisdiction to address whether defendant's continued detention was warranted (or could not

change or modify the initial detention order), because defendant had filed an appeal from the court's initial detention order. It maintains that, once an appeal is filed from an interlocutory order of the trial court, the trial court is restrained from entering any further order that would change or modify the appealed order. *Witters v. Hicks*, 338 Ill. App. 3d 751, 756 (2003) (shareholder action; "[o]rders entered after the filing of a notice of appeal are valid if the substantive issues in the interlocutory appeal are not altered so that they present a new case to the reviewing court."). The State argues that the fact that a defendant dismisses a prior-filed appeal, such as here, does not affect the interlocutory nature and restraints of Rule 604(h). The State maintains that it makes no sense to ignore *Witters* and argue that each review by a trial court of a defendant's continued detention involves new information and evidence.

¶ 32    We disagree. *Witters* was a shareholder breach-of-fiduciary-duty action, not a case under the Act. Thus, it is not helpful to our analysis. Further, under the Act, a defendant has the right to appeal an order denying his or her pretrial release. 725 ILCS 5/110-6.1(j) (West 2022) ("The defendant shall be entitled to appeal any order entered under this Section denying his or her pretrial release."). The statute also provides that while a defendant remains detained pursuant to section 110-6.1 of the Code, the trial court must make a finding at each subsequent court appearance that detention remains necessary. *Id.* § 110-6.1(i-5). Rule 604(h)(9) provides that "[t]he circuit court shall retain jurisdiction to proceed with the case during the pendency of any appeal from an order entered pursuant to sections 110-5, 110-6, and 110-6.1 of the Code of Criminal Procedure of 1963." Ill. S. Ct. R. 604(h)(9) (eff. April 15, 2024). Finally, during the pendency of defendant's first appeal, Rule 604(h) did not preclude multiple appeals at the same time.

¶ 33    The State also argues that the fact that defendant moved to dismiss his first appeal does not bear on our analysis of this issue because defendant should "not be allowed to manipulate

jurisdiction and stays by filing a notice of appeal and then dismissing [the] appeal to avoid" *Witters*. This argument is not well taken because defendant's motion to dismiss his first appeal as moot was unopposed by the State.

¶ 34 Finally, although not addressed by the parties, we address the recent changes to Rule 604(h) because they bear on our review and the State's argument that allowing a trial court to revisit a detention order while an appeal is pending is absurd and does not serve justice. Illinois Supreme Court Rule 604(h)(11), which became effective during the briefing of this case, provides that "[n]o appeal from a subsequent detention or release order may be taken while a prior appeal under this rule by the same party remains pending in the appellate court." Ill. S. Ct. R. 604(h) (eff. April 15, 2024). Thus, under the current version of the rule, a party may file only one appeal at a time. The amendment to Rule 604(h), including subsection 11, was, we conclude, procedural (and applies retroactively to this appeal (*Easton*, 2017 IL App (2d) 14180, ¶ 14)), because appeals under Rule 604(h) are interlocutory.

> "Article VI, section 6, of the 1970 Illinois Constitution provides that final judgments may be appealed as a matter of right from the circuit court to the appellate court. Ill. Const. 1970, art. VI, § 6. There is no corresponding constitutional right to appeal from interlocutory orders of the circuit court. Rather, article VI, section 6, vests [the supreme] court with the authority to provide for such appeals, by rule, as it sees fit. Ill. Const. 1970, art. VI, § 6. Except as specifically provided by those rules, the appellate court is without jurisdiction to review judgments, orders or decrees which are not final. *Flores v. Dugan*, 91 Ill. 2d 108, 112 (1982)." *Almgren v. Rush-Presbyterian-St. Luke's Medical Center*, 162 Ill. 2d 205, 210 (1994).

¶ 35    Because this appeal comes before us after the amendments to Rule 604(h) and because defendant's second appeal is the only currently pending appeal on his case, we have jurisdiction to consider it.  Further, we reject the State's argument that allowing multiple appeals is absurd or does not serve justice.  To the extent this argument had any merit, it has been addressed by the amendment to the rule.

¶ 36                              III. CONCLUSION

¶ 37    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 38    Affirmed.